IN THE UNITED DISTRICT COURTS
IN THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| JOHN E. COLLINS, JR., a/k/a JAKE E. COLLINS, JR., an individual, | CASE: 2:20-CV-01206- JCC |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| v. | |
| NOVA ASSOCIATION MANAGEMENT PARTNERS, LLC, a Washington limited liability company, SOUND LEGAL PARTNERS, PLLC, a Washington limited liability company, and RACHEL RAPP BURKEMPER, an individual, | [JURY DEMAND] |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiff JOHN E. COLLINS, JR., a/k/a JAKE E. COLLINS, JR., hereinafter ( "Collins")
by and through the undersigned counsel, hereby amended his Complaint to add cause of action
and VILLA MARINA ASSOCIATION OF APARTMENT OWNERS, a condominium
association organized under Washington law as a defendant, alongside with Defendants sue
NOVA ASSOCIATION MANAGEMENT PARTNERS, LLC, a Washington limited liability
company, SOUND LEGAL PARTNERS, PLLC, a Washington law firm and limited liability
company, and RACHEL RAPP BURKEMPER, a member of the Washington Bar, in her

FIRST AMENDED COMPLAINT                    1

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

individual capacity as well as her capacity as a partner and owner of SOUND LEGAL
PARTNERS, PLLC, and states the following:

## I.   INTRODUCTION & IDENTIFICATION OF PARTIES

1.     This case is about the Defendants' specialized businesses of collecting debts on
behalf of homeowner associations and condo associations. Their business as debt collectors
involves not only the collection of monetary payments, but also foreclosure of real property to
satisfy monetary judgments. Fairness and transparency in the accounting of the amount of the
debt, and communication with debtors about how the Defendants arrive at such amount, are of
utmost importance, as it means the difference between the debtor keeping or losing his property.

2.     The facts of this case reveal that the Defendants, through certain agreements for
services, have worked in concert, employing certain accounting schemes and debt collection
practices to deny debtors like the Plaintiff, the right to know the status of the account, to dispute
the debt owed and to cure any shortfall. The Defendants have successfully rigged Plaintiff's
account rendering the alleged amount of the debt owed by him false and unreliable. Because the
Defendants then presented false evidence to a court of law to obtain judgments, they have also
infected the integrity of the judicial system and public trust in the same system. The instant
lawsuit calls out the Defendants' pattern or practices of business for what they are— violations
of the Federal Fair Debt Collection Practices Act and the Washington Consumer Protection Act,
and other tort law.

3.     Plaintiff John "Jake" E. Collins, Jr., lived in Unit 173 of Villa Marina
Condominium, a 180-unit community located in Redmond, King County, Washington, for two
years as a tenant before buying it from the owner in 1995. Collins used the Unit as his primary
residence for many years. Once retired from Boeing, he began renting out Unit 173. After paying
the mortgages and the ever-rising condo assessment, Collins was able to receive a modest
supplemental income. Collins acquired other real property and he works full time to manage
them and derives an income to support of himself and his disabled adult son.

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

4.      In buying Unit 173 as his own primary residence, Collins obligated himself to pay for assessments levied by the governing body of Defendant Villa Marina Association of Apartment Owners ("the Association"), a non-profit association organized under Washington laws.

5.      The Association's billing and collection of assessments from the unit owners is outsourced to a property management company. Before Nova Association Management Partners, LLC ("Nova"), a Washington limited liability company, took over in October of 2018, the role of the Manager was filled by another property management company. Defendant Nova does business out of King County, Washington and under the name of "Pinnacle," and is responsible for invoicing assessments, issuing statements of account and notices of outstanding charges, receiving payments, applying the same, and in the process, necessarily communicating with the unit owners, including Collins, about the status of their accounts. Nova also acts as the Association's debt collector; it pursues delinquent accounts through written demands for payments, debt collection notices and referrals to a collection attorney for litigation. Nova conducts business using the mail, telephone lines, and the internet, under both the Association 's name and the name of "Pinnacle".

6.      To obtain monetary and foreclosure judgments regarding delinquent accounts, the Association needs a law firm with lawyers specializing in association debt collection. Defendant Rachel Rapp Burkemper ("Burkemper"), who is a member of the Washington Bar Association, and a partner of her law firm, Defendant Sound Legal Partners, PLLC ("SLP"). Burkemper and SLP together fill the need of the Association for a debt collection lawyer.

7.      Burkemper has been personally and directly involved in a collection litigation against Collins, which she filed in King County Superior Court, like many other collection lawsuits on behalf of the Association. Even before filing the lawsuit and advancing it in court, Burkemper regularly issues payment demands and other debt collection notices to debtors. Burkemper issues written communication on the letterhead of SLP and uses the mail, the telephone, and the internet to transmit debt collection communication. She also uses the mail and

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

the court's electronic portal to file and serve pleadings, motions and other documents regularly as part of SLP's primary business as a debt collection law firm.

8.  Debt collection lawsuits on behalf of associations like the Association are filed in the superior courts of the State of Washington. The claim for monetary payment is always accompanied by a request for foreclosure of the property. Such claim is supported primarily by documentation of delinquency of the subject account or debt. The Association's proof is placed before the court by its lawyer for consideration through the business records exception to the hearsay rule. The foundation and admissibility of this proof are established via affidavits or declarations sworn out by the collection lawyer and employees of the management company attesting to the accuracy of the numbers being represented therein. The evidence comes in various forms of accounting commonly referred to, including but not limited to, Statements of Account, Notices of Outstanding Charges and other Demands for Payment.

9.  In this case, in addition to Statements of Accounts, Notices of Outstanding Charges, Debt Demands, Debt Validation Notices, the Defendants also create and use what they refer to as "Ledgers". Defendant Burkemper has admitted to creating these ledgers herself and contending that these ledgers can be used to "track payments" of the property owners' accounts. The Defendants' "Ledger" is an Excel spreadsheet representing dates and amounts of assessment levied, payments received, fees and interests charged, and the resulting balance due and owing each month. Excel is an electronic spreadsheet program that is used for storing, organizing and manipulating data. https://www.lifewire.com/what-is-microsoft-excel-3573533 (last visited August 1, 2020).

10.  The Defendants profit directly and substantially from debt collection and collection litigation against property owners; every payment collected whether through negotiated settlement, formal judgment or foreclosure sale goes to pay not only the assessment, but also the Defendants' compensation. An association collection lawsuit is generic by nature and when unopposed, would result in a judgment simply and quickly. Yet, the attorney fees portion incurred by the plaintiff-association of the judgment can be much larger than the amount

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

of the debt. The few debtors who choose to assert defenses risk themselves a huge judgment of attorney fees in addition to the cost of their defense because the association-plaintiff is guaranteed payment via its super priority lien and the sale of the property through foreclosure. The ease of collection litigation and the disparity of power between the association-plaintiff and the debtor-defendant guarantee success and ensure profits for debt collectors like Nova, Burkemper and SLP. Thus, it could be argued that the last line of defense for the debtor is the judiciary's willingness to carefully examine the accounting proof and the accompanying written attestation in support of such proof submitted by the association's lawyer in its decision whether to grant final judgments.

11.     The Defendants make up a group of companies and individuals, through express or implied agreement among themselves, combine their efforts to accomplish the lawful purpose of debt collection through unlawful means. The unlawful means include but not limited to, delaying the posting of payments or failing to apply payments altogether in order to charge late fees, interests and legal fees, declaring consumer accounts to be delinquent, initiating legal proceedings for collection of monies and foreclosure of property, filing and presenting inaccurate account statements and ledgers and sworn statements about their accuracy in order to obtain judgments from the court, intercept of rents and seizure of possession of consumers' property all based on false evidence. The Defendants affirmatively rely on one another's business to accomplish the common design of extracting monetary payments from consumers and foreclosing on their real property.

12.     The claims asserted by the Plaintiff are grounded upon the Fair Debt Collection Practices Act, §1692 et seq. As such, this Court has federal-question jurisdiction pursuant to 28 U.S.C. §1331. The Defendants are doing business from their locations located in King County, Washington and Plaintiff Collins is a resident of King County, Washington. Venue is properly in Seattle, King County.

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

## II.   FACTUAL ALLEGATIONS

13.     Even after the recovery of the economic downturn of 2008, the Association through the Defendants, has sued property owners regularly for past due assessments. In the past few years, there are dozens of collection lawsuits filed in King County in the Association's name. Defendant Burkemper sued Collins in 2016 to foreclose upon his Unit 173 in King County Superior Court for past due assessments ("Lawsuit I"). Although Collins vigorously disputed the accounting put forth by Burkemper, he ended up having to pay the amount demanded by Burkemper to save his Property from foreclosure. Lawsuit I was resolved through a Stipulation & Order of Dismissal that Burkemper filed with the court in March of 2017 as counsel for the Association.

14.     Burkemper penned another complaint in December of 2019 and sued Collins again under King County Superior Court case number 19-2-32349-9SEA (Lawsuit II). In Lawsuit II, Burkerkemper moved for summary judgment unsuccessfully and pursued reconsideration, as well as other reliefs against Collins. Burkemper stated in the Association's Motion for Summary Judgment, "it is obvious that Mr. Collins fell behind again on his assessments *immediately* after making the February 2017 payment."

15.     Burkemper's representation to the Court was false because the Association's own evidence submitted in support of summary judgment, Statement of Account, shows that Collins had a credit of $2,012.27 as a result of his payment to settle Lawsuit I in February of 2017 (Exhibit 1, Statement of Account). Despite showing a positive balance on the Collins Account, and no assessment due as of February 17, 2017, the Defendants nevertheless charged Collins $100.00 in Late Fees on February 21, 2017, in the same month that the settlement payment was posted.

16.     According to the Statement of Account, on February 21, 2017, Collins was charged $360.11 as "Legal Asmt." This amount was reversed, but then re-imposed. The notations accompanying these entries read, "int. Per SLP, Less amount booked by PSCG Credit-Prepaid," "Reallocated Int Assessed to Correct Inc. Code Interest" and, "Interest Assessed Per

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Attorney." These entries, albeit cryptic, demonstrate an intentional accounting manipulation at the directive of Defendants SLP and Burkemper.

17.     On March 1, 2017, the Statement shows two assessments were levied and paid from the Original Credit. After the payment, the Collins Account showed a positive balance of $728.15 in March of 2017.

18.     On March 6, 2017, Collins was charged another $305.50 in "Attorney Fees" leaving a positive balance of $422.65.

19.     On March 28, 2017, Collins' payment of $628.18 was received and posted, increasing the positive balance to $1,050.83.

20.     On April 1, 2017, two assessments were due and again paid from the positive balance, leaving a net positive of $200.00.

21.     20. 21.  On April 3, 2017, Collins was charged another $328.49 in Attorney Fees.

22.     On April 14, 2017, Collins was charged $1.06 in Attorney Fees.

23.     On April 17, 2017, Collins was charged $25.00 in Late Fees, even though payments for April were paid on April 1 from the Original Credit so the payments were not late (Exhibit 1, Statement of Account).

24.     The unauthorized charges over the course of three months completely depleted the Original Credit causing the Collins Account to be delinquent as of May of 2017. If the Defendants had any justification in charging Collins Late Fees, Attorney Fees, and Interest, they did not disclose to Collins.

25.     During the period of March 1, 2017, and December 31, 2017, the assessments due added up to $7,306.50. Meanwhile, Collins had made $7,178.18 in payments. Adding the Original Credit of $2,012.27 to what he made in payments, Collins would have had a positive balance of $1,883.85, but for the unauthorized charges. Moreover, because of the manipulations within the Collins Account, the account balance as of May 1, 2017 was fundamentally erroneous. Nevertheless, the Defendants used this balance to calculate all assessments due, payments made, and any charges to the account, going forward every month.

FIRST AMENDED COMPLAINT                                    7

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

26.     The Association's written Collection Policy allows interests to be charged at the rate of 12% per annum. Late Fees in the amount of $25.00 are to be charged once a month on the 16th if the account is delinquent on that date. Yet, the Defendants' Statement of the Account shows that Collins was charged Late Fees twice in the same month; once on July 17, 2017, and again on July 19, 2017, without any justification.

27.     The Association has experienced problems with its manager's handling billing and debt collection for years and the transition to Nova in October of 2018 made the situation worse. In March of 2019, Nova sent Collins and other property owners a letter identified as "Villa Marina Payment and Late Fee Update" acknowledging that the management transition was "a very large undertaking" and expressing "**it is not unusual for it to take some time to establish correct ledgers and account balances, and for the new management staff to become familiar with all of the details of the property to be able to respond back to owners' questions and requests quickly.**" In the same Update, Nova admitted to widespread problems with account inaccuracies and improper late fees and interest being charged to property owners which caused the Association having to waive late fees and interest for several months, retroactively.

28.     Despite its admission that the transition was difficult and there were possible errors inherent in the owner accounts, Nova never reset the Collins Account but continued to send dunning letters accompanied by "Outstanding Charges" between February and August of 2019. Nova sent dunning letters to Collins' tenants rather than to his mailing address which Nova has on file which caused great embarrassment for Collins. Despite these monthly dunning letters, Collins could not get anyone from Nova to meet or speak with him in person to resolve what he believes to be errors in how they applied his payments.

29.     When Collins tried to email Nova in April of 2019, his email was bounced back. Collins was finally able to connect with Sabrene Odeh, of Nova, via email, who indicated that the email Nova sent to a system email incapable of receiving responses. Odeh explained, "[i]t is deceiving because it says it's coming from the Association email, but it is actually not. It is a 'no

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

reply' email . . ."  Nova's failure to provide ready access to Collins and other property owners to discuss their account status belies its web advertisement that the company is all about "Enhancing Community Living Through Communication And Collaboration," as well as "Protecting Your Most Important Asset," "Foster Communication" and "Build A Sense of Community." (Novaamp.com/services).

30.     The Association selected and hired Nova as its Agent/Manager, with full knowledge of Nova's failure to make the transition successfully has caused for errors to occur in the accounts of the property owners, especially in the case involving Unit 173 as owned by Collins. Even though Collins appealed to the Association repeatedly to intervene, his pleas for help to straighten out his account fell on deaf ears.

31.     Once the delinquency of the Collins Account was manufactured, it became much more severe because of certain illegal practices employed by Nova. One such practice is Nova's failure to account for all payments made. Noticing this pattern, Collins began to obtain Certificate of Mailing to track his payments. Collins recorded that he sent Nova check number 7897 for $723.00 via first class mail on May 2, 2019, and check number 8005 for $723.00 via first class mail on September 5, 2019 and obtained Certificate of Mailing on these dates but these checks never cleared his bank. During this time, Nova continued to send dunning letters advising Collins of the necessity of payment. Meanwhile, Collins tried calling Nova repeatedly to talk to someone with whom he could learn how Nova had been applying his payments, to no avail.

32.     In addition to failing to account for payments received, Nova has also engaged in the practice of holding Collins' payments for an unreasonably long time before applying them to the Account. This practice has allowed Nova to "pyramid" Late Fees and Interest on top of Late Fees and Interest every month because the Account is kept in a perpetual status of delinquency:

| Check No. | Date/Mailing | Clearance | #Days Held |
|-----------|--------------|-----------|------------|
| 7962 | 10/18/18 | 2/28/19 | 121 days |
| 7973 | 1/30/19 | 3/8/19 | 37 days |
| 7974 | 1/30/19 | 3/8/19 | 37 days |

FIRST AMENDED COMPLAINT                          9

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

| 7981 | 4/1/19 | 5/2/19 | 31 days |
| 7995 | 6/25/19 | 7/16/19 | 21 days |

33.     Nova also engaged in the practice of returning payments to Collins without any explanation. Laura Lotz of Nova, swore in her Declaration filed in support of the Association's Motion for Summary Judgment that on or about November 4, 2019, she received Collins' check number 8011 in the amount of $1,687.34 but "[a]fter conferring with the Association's counsel, [Lotz] did not deposit the check and instead returning it to the owner." The Association's counsel, during this time period, was Defendant Burkemper.

34.     Nova also held Collins' check number 8005, which he mailed on September 5, 2019, for ten (10) weeks before returning it to him without any explanation. Nova's pattern of holding Collins payments and returning them without explanation, while avoiding his request for investigation and resolution of the alleged delinquency, caused Collins Account to be on a free-fall status. Nova's various schemes have perpetuated and aggravated the delinquency of the Account; they kept Collins from knowing the true status of his account at any given time and to cure any potential shortfall.

35.     The federal Fair Debt Collection Practices Act requires debt collectors to include a mini-Miranda warning on their communication with debtors as well as specific information about the debtor's right to dispute the debt. Nova's dunning letters violated the requirement concerning advisement of debtors' rights.

36.     One of Nova's dunning letters sent Collins dated February 19, 2019, advises:

**You have until the close of business 14 days from the date of this letter to bring your account current**. For your reference, we have enclosed your account statement that details your previous balance, assessment charges, payments and any late fees assessed. If you feel this balance is in error, please contact our office immediately.

(Exhibit 2, Composite of Nova's Dunning Letters).

37.     Nova's February 19, 2019 Letter advised that Collins' failure to pay by the deadline may lead to "referral of your account to a collections attorney for additional action."  It also warned, "[a]ll collection charges will be assessed to your account. There is no cap on the

FIRST AMENDED COMPLAINT                         10                         **HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

amount of legal fees that may be levied against your home" and "[a]cceleration of future amounts owing or the association may require the owner to pay a deposit against future assessment amounts."

38.     Nova's February 19, 2019 Letter contains the following announcement:

> THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU DO NOT DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, WE WILL ASSUME IT IS VALID, IF YOU DISPUTE THE VALIDITY OF THIS DEBT OR REQUEST VERIFICATION OF THIS DEBT, SUCH COMMUNICATION MUST BE MADE IN WRITING WITHIN TEN (10) DAYS AFTER RECEIVING THIS LETTER.

This first part of this message is known as mini-Miranda and the second part of the message is the advisement of debtor's right to dispute the debt, both of which are required under the federal Fair Debt Collection Practices. However, Nova merged the two advisements together, reduced the font, and placing it at the very end of the communication making it much more difficult to detect. Most notably, the advisement of debtor's right allowed Collins only ten (10) days from the date of receipt instead of the statutorily required period of thirty (30) days to dispute the debt.

39.     The following month, Nova sent Collins another dunning letter dated March 21, 2019, containing the following:

> **You have until the close of business 10 days from the date of this letter to bring your account current**. If a full payment of the amount owing is no received, your association will have no other alternative but to forward your account to an attorney to assist with the collection of this debt.
>
> Please be aware that if an attorney becomes involved in the collection of this debt you will be responsible to pay for all legal fees incurred by the association. Should your account continue to remain past due, your association may begin foreclosure proceedings and you could lose your home.

(Exhibit 2).

40.     Again, like the February Letter, Nova combined the advisement of debtor's rights with the mini-Miranda, in a smaller font, placing it at the bottom of the communication, and providing Collins only ten (10) days upon receipt to dispute the debt. As the amount of "delinquency" grew each month, Nova increased the threat level, "[b]e advised that the Board of Directors for Villa Marina Association of Apartment Owners will be contacting a collections

FIRST AMENDED COMPLAINT

11

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

attorney to aggressively pursue the collection of your account. To avoid this action, please submit a payment to bring your account current or contact us immediately to set up a payment plan." All seven dunning letters sent by Nova, the last one dated August 19, 2019, suffer from the same deficiency; the advisement of debtor rights was combined with the mini-Miranda, giving Collins only ten (10) days to dispute the debt, while urging him to deal with the payment immediately.

41.     Nova's dunning letters sent to Collins in February, March, April, May, June, July, and August of 2019, each was accompanied by an "Outstanding Charges" (Exhibit 2, Composite of Outstanding Charges). The Outstanding Charges have been calculated based upon the erroneous balance of May of 2017.

42.     Nova's dunning letters, accompanied by their respective monthly Outstanding Charges, are an integral part of Collins' allegations of their larger scheme of violating federal and state laws. The dunning letters served as a necessary prelude to Nova's referral of the Collins Account to Defendants SLP and Rachel Burkemper for litigation.

43.     Once the Collins Account was turned over to Defendant Burkemper in October of 2019, Burkemper issued a Demand for payment dated October 9, 2019, which is her Initial Communication with Collins or a "g Notice" under the FDCPA. Burkemper identified herself and SLP collectively as "a Debt Collector" and advising Collins: "The total amount due on your account **through today's date is $7,323.47**. **This amount includes assessments, late fees, interest charges, and attorney's fees and costs. A lien has also been placed against your unit**." Burkemper attached one of her ledgers to the Demand and a Notice of Claim of Lien (Exhibit 3, Burkemper Demand, Ledger and Notice of Claim of Lien).

44.     Inexplicably, Burkemper's signed Notice of Claim of Lien shows **a different amount, $7,092.32, as due and owing** (Exhibit 3).

45.     The Burkemper Demand also contains the following representations regarding payments due by certain dates:

Balance on October 16, 2019, including **$229.15 final payment processing** $7,361.82

FIRST AMENDED COMPLAINT

12

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Balance of November 1, 2019, including **$229.15 final payment processing** $8,207.62

Balance on November 12, 2019, the deadline for your response:          $8,234.77

46.     The $229.15 "Final Payment Processing" is not mentioned in the Association's written Collection Policy or any other written document upon which Collins and other owners were notified in advance and consented to prior to October 9, 2019. The Final Payment Processing Fee has remained on Burkemper's numerous ledgers and incorporated fully into the total amount of the debt, even though no Final Payment was ever made on Collins' Account.

47.     Burkemper's ledger which was attached to her Demand of October 9, 2019, shows an amount of $8,207.62 as being due on November 1, 2019 (Exhibit 3). In contrast, Burkemper's Exhibit J, another one of her ledgers, which was submitted to the superior court in support of Motion for Summary Judgment, shows a balance of only $7,275.76 as of November 1, 2019, representing an unexplained inflation of $702.71 (Exhibit 4, Burkemper Exhibit J).

48.     The ledger accompanying the Burkemper Demand of October 9, 2019 (Exhibit 3), contains amounts that directly contradict the amounts represented by Nova's "Outstanding Charges" (Exhibits 2 and 3). Therefore, Collins sent a Request of Debt Validation to Burkemper dated November 11, 2019, setting forth very specific issues, including the fact that there are "erroneous calculations in the spreadsheet [that she sent]."

49.     On November 14, 2019, Burkemper responded to Collins by sending him a Debt Validation Notice accompanied by another ledger (Exhibit 5, Burkemper Debt Validation Notice & Ledger). The beginning balance of **every month**, as represented by this Ledger, is different from the beginning balance of the same month appearing on Nova's Outstanding Charges for all eight months of 2019; the balances upon Burkemper's Ledger are much higher but without any explanations:

| Date | Burkemper's Ledger | Nova's Outstanding Charges |
| --- | --- | --- |
| 1/1/19 | $3,224.15 | $3,118.80 |
| 2/1/19 | $3,979.58 | $3,872.49 |

FIRST AMENDED COMPLAINT

13

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

| | | |
|---|---|---|
| 3/1/19 | $4,040.05 | $3,816.80 |
| 4/1/19 | $3,457.78 | $3,230.07 |
| 5/1/19 | $3,603.07 | $3,374.68 |
| 6/1/19 | $4,473.61 | $4,243.49 |
| 7/1/19 | $5,351.25 | $5,120.73 |
| 8/1/19 | $4,784.74 | $4,546.04 |

(Exhibit 5 in comparison to Exhibit 2)

50.     The amounts contained in the Ledger attached to Burkemper's Notice of Debt Validation of November 14, 2019 also cannot be reconciled with Burkemper's own Exhibit J as filed with the superior court relating to her Motion for Reconsideration (Exhibits 4 & 5).

51.     The Complaint for Lien Foreclosure and For Monies Due against Collins and his Property, dated December 6, 2019, as filed with King County Superior Court under case number 19-2-32346-9SEA, contains this specific representation: "**As of December 6, 2019, monthly assessments, fees, interest, and attorney's fees in the amount of $13,653.14 are owed on the Unit.**" Said Complaint was served directly upon Collins by a process server.

52.     When seeking summary judgment in the superior court, Burkemper filed Laura Lotz Declaration and Exhibit C thereto (Exhibit 6, "C"). Exhibit C, yet another ledger created by Burkemper, shows **a balance of only $8,985.32 as of December 13, 2019**.

53.     After the court denied summary judgment, Burkemper filed the Association 's motion for reconsideration and attached Exhibit I, which **shows a balance of only $10,573.95** (Exhibit 7), and Exhibit J, which **shows a balance of $9,065.31, inclusive of attorney's fees and costs as of December 8, 2019** (Exhibit 4). The amount of the debt expressed in Burkemper's Complaint is inaccurate at the time of filing because it has a balance due and owing as of December 6, 2019, being substantially larger than the balance due and owing on the later dates of December 8, and  December 13, 2019.

54.     The inexplicable discrepancies among the various accountings the Defendants submitted to the superior court prove that (1) both Nova and Burkemper were collecting the debt

14                    **HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

from their separate accounting systems, (2) the numbers generated by these two systems do not match, and (3) neither system can be reliable.

55.    It became abundantly clear in Burkemper's various accountings and ledgers filed in Lawsuit II conflict with one another which means the court could not and should not rely upon any of them for purpose of summary judgment. After the superior court denied summary judgment, Burkemper immediately moved for reconsideration. In her Motion for Reconsideration, Burkemper attached her Declaration and nine (9) more ledgers, Exhibits B through J as support. Even so, Burkemper contends that the court "can reconstruct in full all debits owed from March 1, 2017 *without a ledger*."

56.    By her filing for reconsideration, **Burkemper finally admitted that the Association has "revised its accounting to adopt Defendant's interpretation of when the payments were submitted."** As a result, **the amount of the debt, at the time of Burkemper's filing for reconsideration is $5,333.52 less than the amount she requested at summary judgment.**

57.    Burkemper has characterized this $5,333.52 error or deficiency in her accounting as a "windfall" to Collins. Even though her own Ledgers show an ever-increasing amount in attorney fees being charged to Collins Account, Burkemper asserts that it is Collins, who is trying to take advantage of *her* erroneous accounting:

> Plaintiff is aware of no case law that would mandate a trial based on an error that resulted in a more favorable outcome to the defending party. **What we have here is a defendant who is fighting to get past summary judgment to hopefully force a creditor into a settlement that involves waiving even more amounts rightfully owed.**

58.    While admitting to the discrepancy of $5,333.52 affecting the amount of the debt, Burkemper argued that " . . . the use of forensic accountants and trials are helpful where there are instances of theft and fraud, not **generosity** that has benefitted the defending party."  Despite Burkemper's arrogant rhetoric, the gravity of her action—an attorney who attempted to obtain a judgment from the court using false evidence—has not been lost on Collins as the victim of the Defendants' shenanigans.

15                    **HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

59.     Burkemper's own proof belies her assertion that the error inures to Collins' benefit and some "generosity" has been bestowed upon him. Even though Burkemper's error of $5,333.52 has been exposed, she has generated much more in attorney fees and litigation costs through her motion for summary judgment, motion for reconsideration, motion for custodial receivership and motion for supplemental judgment. An examination of Burkemper's Exhibits I and J where Exhibit I represents the amount prayed for at summary judgment and Exhibit J is the alleged corrected amount upon reconsideration, reveals that the Attorney Fees portion in either case makes up more than 50% of the total amount due to the Association (Exhibits 4 and 7). Thus, even though the Defendants' schemes were finally exposed through Collins' resistance of summary judgment, the Defendants have nevertheless profited from their schemes, and Collins, as the debtor, would pay the ultimate cost of bringing the Defendants' unfair and deceptive conduct to light.

60.     In both Exhibits I and J, Burkemper also charges Collins $4,275.00 for services rendered by a company identified as "Leatha Consulting" for "Data Collection."  In response to Collins' request for discovery, Burkemper expressed that the Association was "hiring an ESI professional to address the discovery requests" and warned Collins that the cost would be borne by him. If Burkemper hired Leatha Consulting to produce discovery pursuant to Washington Rules of Civil Procedure, the litigation has yet to conclude, and the court has yet to determine the entitlement or reasonableness of her attorney fees or litigation costs. Therefore, just like the Final Payment Processing Fee which was wrongfully charged to Collins Account back in October of 2019, it was improper for Burkemper to charge Collins for services provided by Leatha Consulting and incorporate the same as part of the debt owed.

61.     Burkemper's attitude toward Collins and defense counsel has been consistently arrogant and spiteful. She sought interception of Collins' rental income and successfully convinced the superior court to impose custodial receivership on Collins' Property. Burkemper has scoffed at Collins' offer to make a partial payment of any assessment owed so he can sell the Property and mitigate his losses, and stated bluntly, "**The Association has no intent of releasing**

FIRST AMENDED COMPLAINT

16

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16ᵗʰ Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

the lien until it is paid in full . . . **The Association's lien will remain on title, and the probability of any voluntary sale closing is extremely unlikely unless the purchaser or title company wants to assume the liability associated with the lien**." Given the super priority of the Association's lien that Burkemper recorded in October of 2019, and the fair market value of Collins' Property to be approximately $500,000, the Association's potential judgment is secured. Therefore, Burkemper's litigation tactics in Lawsuit II were designed and intended to be oppressive and extortive toward Collins.

62.     Having been advised by Collins that he had listed Unit 173 for sale and has made a number of showings, Burkemper nevertheless demanded Collins to remove all furnishings, include those provided by a staging company to market the Unit, so the receiver can rent it out. Burkemper first gave Collins a certain number of days to vacate but went back on her words and reduced the number of days that Collins would have to clear the Unit. Burkemper caused for new lock to be installed on the Unit and removed the lock box that the listing agent had placed for purpose of showing the Unit to potential buyers. Even though no tenant has been secured by the receiver, Burkemper informed she would seek additional fees and costs against Collins to remove the furnishings.

63.     The superior court granted reconsideration and approved judgment against Collins in the amount of $44,092.27. Acknowledging that Collins was exposed to an ever increasing amount of attorney fees in his resistance of the collection lawsuit, the court stated that "the resulting judgment is the best that Collins could do if the case went to trial."

64.     Feeling desperate to regain possession of the Unit to sell it to mitigate his damages, Collins inquired Burkemper if he could pay the judgment amount of $44,092.27 via wire transfer. Burkemper responded by immediately filing a motion for supplemental judgment demanding an additional amount of $11,415.35.

65.     According to Burkemper, the additional amount consists of "$11,052.00 in attorneys' fees and $363.35 in costs . . . These amounts include, inter alia, correspondence between Plaintiff and its attorney on how to proceed in this matter, drafting a motion for

FIRST AMENDED COMPLAINT

17

**HA THU DAO
ATTORNEY AT LAW**
10728-16ᵗʰ Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

reconsideration and supporting documents, drafting a motion to appoint custodial receiver and supporting documents, and efforts to obtain this supplemental judgment and correspondence with counsel of Defendant." Where the principal judgment granted by the superior court was for $21,657.15, the total amount for attorney fees sought by the Defendants, including the proposed supplemental judgment, is $34,235.00, or 63% of the total judgment. It is clear that the Defendants' collective debt collection methods are extremely effective to reach their common design of churning Late Fees, Interests, and Attorney Fees and Legal Costs.

66.     The Association, Nova, Sound Legal Partners LLC, and Rachel Rapp Burkemper, through agreements, have all participated in the schemes of manipulating the Original Credit, charging Late Fees in violation of the Association's Collection Policy, delaying the posting of Collins' payments to his account, returning payments without explanations, referring Collins Account for collection and suing to foreclose upon his Property, and the schemes have worked as intended; the Property went from having a surplus to delinquent status to being placed under active foreclosure, and Collins has lost possession of his Property and thus the ability to voluntarily sell it to retain any equity. Each Defendant has acted as an extension of the others; their overt acts accomplished the common design to extort monetary payment from Collins or to sell his Property through foreclosure and pay themselves with the proceeds via judicial judgments.

67.     Collins is sickened by the consequences of losing his Property to the Defendants' illegal debt collection schemes. As a result of the Defendants' collective conduct, Collins has suffered injury in the form of loss of possession, depreciation of value, loss of opportunity to sell his Property at fair market value, and therefore loss of equity. Collins has suffered actual damages in the form of loss of rental income, loss of time that he could devote to his business of management rental property, and substantial out-of-pocket expenses including attorney fees and costs.

68.     Under the superior court's order of custodial receivership, he will have to pay a large judgment to have possession restored to him or lose his Property to foreclosure. As a result

FIRST AMENDED COMPLAINT

18

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16ᵗʰ Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

of being locked out of the Unit, Collins had to pay a fee to cancel his listing with a real estate company and suffers reputational damages and has lost his opportunity to sell his Property and mitigate his damages. As someone who depends on such Property for income and equity to support himself and his disabled son, Collins has suffered severe emotional distress including fear, anxiety, anger, frustration, embarrassment; the emotional distress has manifested itself into various physical symptoms, including but not limited to chronic insomnia, recurring headaches, and upset stomach, including the side effects from having to take Zantac for many months for his heartburn symptoms.

## III.   CAUSES OF ACTION

### A.   CLAIM ONE: VILLA MARINA VIOLATED WASHINGTON CONSUMER PROTECTION ACT

69.   Collins re-alleges the above factual allegations and incorporate them by reference in the below causes of action.

70.   To prevail in a CPA action, a private plaintiff must prove (1) an unfair or deceptive act or practice (2) in trade or commerce (3) which affects the public interest (4) and causes injury to the plaintiff's business or property, and (5) a causal link between the act and the injury.

71.   Villa Marina is in the business of imposing dues and assessments, collecting payments, and providing property owners with information about their accounts. The Association either communicates directly with property owners and/or allows for its manager/agent to communicate with property owners via the mail, fax line, and the internet. Villa Marina's business occurs in trade or commerce.

72.   Villa Marina's act of manipulating the Original Credit in the Collins Account, following settlement of Lawsuit I, by charging unwarranted Late Fees and Attorney Fees, which changed the status of the Account from a surplus to delinquency, and its continued reliance on the erroneous balance to deem the Collins Account as delinquent throughout the years of 2017, 2018, and 2019, are both unfair and deceptive.

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

73.     Villa Marina, by and through its agent Manager Nova and its attorneys, Rachel Burkemper and SLP, perpetuated the delinquency, launched a debt collection campaign against Collins which culminated in litigation for money judgment and seizure of the Property even before foreclosure, which is all based erroneous accounting, has engaged in unfair and deceptive conduct.

74.     Villa Marina participated in a conspiracy with the other Defendants to affect Collins' consumer account where payments from Collins were either omitted entirely, or withheld for an extended time, and then applied as late in order to generate Late Fees and Interest at the rate of 12% per annum. Villa Marina's action is both unfair and deceptive.

75.     Villa Marina participated in a conspiratorial scheme with the other Defendants in billing and debt collection which are propped up with inaccurate, erroneous accounting within their Statements of Account, Notices of Delinquency, Ledgers, and other documentary evidence but presenting them to the court as truth.

76.     Villa Marina's billing and debt collection schemes, which have occurred in commerce are both unfair and deceptive. Moreover, within the past years, Villa Marina has filed dozens of collection lawsuits in King County Superior Court using the same type of documentary evidence and affidavits attesting to the accuracy of such documents. These filings constitute proof that other property owners might have been injured by the same deceptive conduct of the Association, which satisfy the public interest requirement of the CPA.

77.     Under Washington laws, condominium directors have a fiduciary responsibility to exercise ordinary care in performing their duties and are required to act reasonably and in good faith. In the event that Villa Marina has deferred to its agent-Manager and Attorneys to employ these unfair and deceptive practices, or given them carte-blanche to act, Villa Marina is jointly and severally liable for their conduct.

78.     Villa Marina's practices impacts an important public interest; the interest to rely on your homeowner association's honest representations of what assessments are due and payable, and sound accounting principles where payments made are applied timely and correctly

FIRST AMENDED COMPLAINT                              20                     **HA THU DAO**
                                                                            **ATTORNEY AT LAW**
                                                                            10728-16th Ave SW
                                                                            Seattle, WA 98146
                                                                            727.269.9334
                                                                            hadaojd@gmail.com

and the running balance on your account to be accurate, to the penny. Villa Marina's unfair and deceptive practices have caused the Collins Account to be kept in a perpetual state of delinquency, incurring repeated Late Fees and Interests, Attorney Fees and Legal Costs. Villa Marina's action of referring the Collins Account for debt collection and collection lawsuit directly causes the depreciation of the value of Collins' Property. It caused Collins loss of opportunity, time loss and monetary loss in his efforts to set the Account straight and to stop the unlawful collection action. Collins has incurred substantial sums for out-of-pocket costs, including but not limited to attorney fees and costs incurred in defending against the debt collection activities as well as the collection lawsuit.

79.     Villa Marina has taken part in causing the loss of his Property even well before judgment and foreclosure sale through the custodial receivership, which was secured by Villa Marina's lawyers through false evidence.

**B.     CLAIM TWO: DEFENDANT NOVA'S CONDUCT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT**

80.     Collins re-alleges the above factual allegations and incorporates them by reference herein.

81.     The Fair Debt Collection Practices Act (FDCPA) is an extraordinarily broad statute and must be construed accordingly. It is strict-liability statute: a plaintiff does not need to prove knowledge or intent. The statute works to protect the individual debtor as well as to advance the declared federal interest in eliminating abusive debt collection practices. 15 U.S.C.S. § 1692(e). To succeed on an FDCPA claim, a plaintiff must demonstrate that (1) he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a debt as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

82.     In the Ninth Circuit, assessment owed to a condo association is a debt as defined under the FDCPA. Collins is a consumer because he bought Unit 173 in 1995 as his primary residence and in so doing, became obligated to pay for the assessment. Nova is a debt collector

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16ᵗʰ Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

because it regularly engages in collecting assessment debts on behalf of its association-clients, after delinquency. Collins' claims within this Complaint involve Nova's ongoing attempt to collect the association assessments in violation of one or more provisions of the FDCPA.

83.     Section 1692g prohibits a debt collector from using any collection activities or communications that "overshadow" or are "inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." Overshadowing has been defined by courts when the language in the debt collector's communication with debtors is inconsistent with the statutorily-mandated notice, such as when payment is demanded in a stated period shorter than the 30-day statutory period for debtor to contest the debt, or when a debt collector demands "immediate payment."

84.     Nova's dunning letter, the Delinquent Notice-Second Reminder, sent in February 2019, was a part of the overall debt collection campaign against Collins. Although Collins never received the First Notice, Nova's Second Reminder demanded Collins to make payment by the close of business 14 days from the date of the letter. As such, the letter violates §1692g(a)(3) because it reduced the statutory period of 30 days during which Collins could dispute the debt.

85.     Nova's Second Reminder also violates 1692g(a), because of this statement, "[i]f you feel this balance is in error, please contact our office immediately." The statement read by the least sophisticated consumer, in conjunction with the advisement of debtor's rights printed at the very end of the letter, in a smaller font, which gives Collins only 10 days to dispute the debt in writing, would create confusion. Therefore, Nova's Second Reminder violates §1692g(a)(3) and (4) because it misled Collins about both how to dispute the debt and when to do so.

86.     Nova's dunning letter, the Final Notice, dated March 21, 2019, violates §1692g(a)(3) because it demanded payment in 10 days and threatened referral to an attorney for failure to do so. The letter overshadowed Collins' right to dispute the debt because it demands for him to make payment within ten (10) days *from the date of the letter* to pay, while giving him only 10 (ten) days *after the receipt of the letter* to dispute the debt in writing. Therefore, the Final Notice is contradictory and renders the least sophisticated consumer uncertain as to his rights.

FIRST AMENDED COMPLAINT                                    22

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

87.     Nova's remaining dunning letters, sent in April, May, June, July and August of 2019 violate §1692g(a)(3) for they all contain the same advisement of right giving the debtor only 10 days, rather than 30 days to dispute the debt in writing.

88.     Nova's seven dunning letters also violated §1692e which prohibits a debt collector from using any false, deceptive or misleading representation or means in connection with the collection of any debt. In particular, the section prohibits a debt collector from misrepresenting the character, amount, or legal status of any debt. Nova's transmission of the dunning letters, which refer to the attached Outstanding Charges, where the Outstanding Charges were inaccurate based on the beginning balance of May 1, 2017 and other unlawful charges to make up the amount of the debt, is reliance on a false or deceptive means in connection with the collection of the debt owed to the Association.

89.     As a result of Nova's FDCPA dunning letters, Collins was confused and unable to understand the true status of his account to cure any shortfall prior to being sued for collection. As an elderly person who depends on his Property for income and equity to support himself and his disabled son, Collins has suffered severe emotional distress including fear, anxiety, anger, frustration, embarrassment; the emotional distress has manifested itself into various physical symptoms, including but not limited to chronic insomnia, recurring headaches, and upset stomach, including the side effects from having to take Zantac for many months for his heartburn symptoms. Collins has also suffered actual damages in the form of time away from his business, and out-of-pocket expenses including attorney's fees and costs.

90.     Nova's seven dunning letters containing false and deceptive representations constitute violation of the FDCPA and render Nova liable for statutory damages at $1,000 per communication, pursuant to 15 U.S.C. § 1692k(a)(2)(A). Nova is also liable for Collins' attorney fees and costs incurred in prosecuting the FDCPA claims and the emotional distress it has caused him.

91.     Although some of Nova's seven dunning letters were sent more than one year before this action is filed, they served as the foundation of Nova's referral the Collins Account to

FIRST AMENDED COMPLAINT

23

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Burkemper and SLP for litigation. Even if the letters are "stale" they continue to support Collins' state claims, including per se violations of the Washington Consumer Protection Act, which is governed by a four-year statute of limitations.

92.     Section 1692e expressly prohibits Nova from using any false, deceptive means in connection with the collection of any debt. Yet, Nova's overall billing and debt collection practices, including the practices of omitting and/or delaying the posting of payments, and returning payments sent by Collins without explanations in order to charge Late Fees and Interest, and not communicating with Collins, while sending out dunning letters, where Nova knew that the practices will inevitably lead to foreclosure, are means used in connection with the attempt to collect the Associations' debt which are unfair and unconscionable and in violation of §1692f. Nova's overall scheme also violates §1692d because its conduct, in its totality, produces the natural consequence of which to harass, oppress, or abuse Collins in connection with the collection of the Association's debt.

93.     Nova's referral of the Collins Account in September of 2019 for collection litigation using inaccurate or false accounting as evidence violates §1692d of the FDCPA because the natural consequences of its referral are harassment, oppression, and abuse of Collins. But for Nova's unlawful acts in violation of the FDCPA, Collins would not have suffered loss of possession, depreciation of value, loss of opportunity to sell his Property voluntarily, loss of equity, loss of money and resources including attorney fees and costs. However, Collins' greatest damages are his emotional distress caused by Nova's illegal practices.

### C.     CLAIM THREE: DEFENDANT RACHEL BURKEMPER'S DEBT COLLECTION COMMUNICATION TO PLAINTIFF COLLINS VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

94.     Collins re-alleges the above factual allegations and incorporates them by reference herein.

95.     The statutory definition of debt collector, under the FDCPA, reads as follows: "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any

FIRST AMENDED COMPLAINT                              24                    **HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.S. § 1692f(6). Such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. §1692a(6).

96.     It is undisputed Defendant Burkemper has been involved personally in the debt collection of Plaintiff Collins. Before authoring, signing and filing the collection complaint and other pleadings and motions filed in King County Superior Court, Burkemper also issued demand for payment, debt validation notice, notice of claim of lien, and lis pendens against Collins using the mail, the telephone, and the internet, on behalf of the Association. Her law firm, Defendant SLP is also a debt collector because its sole or primary business is to collect debts on behalf of another. The firm regularly files pleadings, motions and other documents, under Burkemper's Washington Bar number, in Washington superior courts to collect consumer debts, and to foreclose upon real property. Thus, the FDCPA applies to Defendant Rachel Burkemper and her law firm, Defendant SLP.

97.     The proscribed collection methods in the FDCPA prohibit *inter alia* debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person, 15 U.S.C.S. § 1692d; from using any false, deceptive, or misleading representations or means in connection with the collection of any debt, 15 U.S.C.S. § 1692e; or from using unfair or unconscionable means to collect or attempt to collect any debt, 15 U.S.C.S. § 1692f.

      1.     **Burkemper's Initial Communication with Collins dated October 9, 2019 violates the FDCPA**

98.     Section 1692g(a)(3) requires the debt collector to send the consumer a written "statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). Section 1692g(a)(4), in turn, requires the debt collector to include a statement in this initial communication "that if the consumer notifies the debt collector

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt . . .." 15 U.S.C. § 1692g(a)(4).79. Section 1692g(b) prohibits "[a]ny collection activities and communication during the 30-day period" that "overshadow or" are "inconsistent with . . . the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b).

99.     Burkemper sent Collins her Demand for payment dated October 9, 2019, in her capacity as a debt collector distinct from Nova, in connection with the collection of the association debt. This initial communication violated §1692g because it demanded payment to be made before the expiration of the statutory 30-day period allowed the debtor to dispute the debt. Burkemper's Demand states a "total amount due today," another amount due on October 16, 2019, and another amount due on November 1, 2019; these deadlines all came before the expiration of the statutory period of 30 days for Collins to dispute the debt. The demand for payment due on any date before the expiration of the statutory period overshadows or contradicts the validation notice because the least sophisticated consumer is likely to forego his right to contest as he is urged to make payment "today" or as soon as possible. §1692g(b).

100.     Burkemper Demand of October 9, 2019, further infringes upon Collins' right to dispute the debt in violation of §1692g because she had recorded the Notice of Claim of Lien, which is a debt collection action, prior to the expiration of the statutory 30-day period. The threat of recording of a lien is a debt collection activity, and Burkemper did not just threaten; she actually recorded the lien. Section 1692g(b) mandates that if the consumer notifies the debt collector in writing within the 30-day period, the debt collector must cease collection of the debt or any disputed portion thereof until the debt collector obtains verification of the debt. Thus, where Burkemper already recorded the Notice of Claim of Lien simultaneous with transmission of her initial communication dated October 9, 2019, she absolutely foreclosed Collins' right to dispute the debt in violation of §1692g(b).

101.     The Burkemper Demand of October 9, 2019, also violates §1692e(2)(A) which prohibits a debt collector from using "any false, deceptive, or misleading representation or means

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

in connection of any debt." A representation is deceptive "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." The Burkemper Demand represents the amount due and owing as of four separate dates but requiring Collins to send in the largest amount, albeit promising "credit" if overpaid; and these amounts all contain an unauthorized "Final Payment Processing Fee" of $229.15. The least sophisticated consumer would be confused by her communication as to how the amount of the debt was calculated at which time, and whether the accuracy of such amount could be relied upon, and when payment was actually due.

102.    Because Nova had already sent Collins dunning letters accompanied by Outstanding Charges representing specific amounts due on some of the same specific dates, Burkemper Demand, which represents different amounts due and owing on the same specific dates, must be treated as incorrect. Stating an incorrect amount of the debt undeniably violates 15 U.S.C. §1692e(2)(A) and renders Burkemper liable under the FDCPA.

### 2.    Burkemper's Notice of Debt Validation Dated November 14, 2019 violated the FDCPA

103.    Collins re-alleges the above factual allegations and incorporates them by reference herein.

104.    Collins' written Dispute dated November 11, 2019 specifically informed Burkemper that "the figures and calculations in the spreadsheet are inaccurate and based on erroneous assumptions." Yet, Burkemper's Debt Validation dated November 14, 2019, in response to the dispute only referred to the generic categories of the authority of the Association to levy association fees, its written Collection Policy, and the applicable interest rate but never addressed the debtor's specific concern of errors underlying the amount of the debt.

105.    Burkemper's Debt Validation Notice of November 14, 2019, which states that ". . . all the amounts charged in our ledger are authorized by applicable law and the governing documents of your Association" is inaccurate because Burkemper has actual knowledge of, and participated in the various unlawful practices designed to inflate the amount of debt with

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

unauthorized and undisclosed Attorney Fees, Late Fees and Interest, double charges of Late Fees, and unjustified Late Fees and Interest based on the misapplication of payments of the Collins Account. Burkemper's Debt Validation Notice of November 14, 2019, contains actual misrepresentations about the nature and the amount of the debt owed because she indicated that these charges were authorized when they in fact were not, and because she incorporated these unauthorized charges into the total amount of the debt.

106.    Burkemper's Debt Validation of November 14, 2019, indicates that "[t]he following is a breakdown of the authority **for all amounts found on the ledger we previously sent you.**" Yet, in another part, the Letter indicates, **"[t]he enclosed ledger supersedes all prior ledgers received from our office**." These representations are contradictory. Should Collins rely on the "breakdown of the authority" but not the "amounts" contained in the ledger Burkemper sent him in October? And should Collins rely on the ledger that Burkemper included with the Validation Notice sent in November as accurate, but not the underlying authority permitting the charges appearing thereon?

107.    Berkemper's Debt Validation contains language that overshadows or contradicts other language informing Collins regarding his rights under the Act and therefore violates the FDCPA. Burkemper's Debt Validation represents the juxtaposition of two inconsistent statements and is invalid under §1692g and therefore is both overshadowing and contradictory. Burkemper's Debt Validation failed to convey the information clearly and effectively and would have made the least sophisticated consumer uncertain as to his rights.

### 3.    Burkemper's Complaint served upon Collins directly violates the FDCPA

108.    Collins re-alleges the above factual allegations and incorporates them by reference herein.

109.    The United States Supreme Court has held that the FDCPA applies to a lawyer who regularly engages in consumer-debt-collection activity, even when that activity consists of litigation. The FDCPA applies to litigation activity of lawyers and all documents they file in

HA THU DAO
ATTORNEY AT LAW
10728-16ᵗʰ Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

court; the Act categorically prohibits abusive conduct in the name of debt collection even when the debtor or the debtor's counsel is the targeted audience. [1] While not all ordinary court-related documents or lawsuits involving the collection of a debt implicate the FDCPA, certain conduct by attorneys during litigation can constitute an improper harassing tactic under §1692d. Such conduct may also violate §1692e if it involves misleading representations. Applying that broad principle, several courts of appeals have affirmed the applicability of the FDCPA to certain activities and documents involved in litigation, including written discovery documents, service of requests for admission, and complaints served directly upon consumers. Further, the act of litigating itself may in some instances form the basis of an FDCPA claim. Thus, while the FDCPA has the apparent objective of preserving creditors' judicial remedies, courts have balanced that purpose against the need to protect consumers from abusive and misleading debt collection practices, even when such practices take the form of state court litigation.

110.    n the Ninth Circuit, the court has held that a complaint served directly upon a consumer to facility debt collection efforts is a communication subject to the requirements of §1692e and 1692f.[2] Burkemper's Complaint, which was served upon Collins directly, which states that the sum of $13,653.14, inclusive of assessments, fees, interest, attorney fees and costs, had "become due before entry of judgment" was inaccurate at the time of its filing because of its misrepresentation regarding the nature of Attorney Fees, Interest and Late Fees as authorized while they in fact were not. The total sum demanded by the Complaint was material to Collins' understanding of the nature of the debt and whether to assert specific defenses against it. Therefore, where the Complaint misrepresents the nature of the debt as well as the amount of the debt as communicated to Collins, the Complaint violated §§1692e and f.

---

[1] *Heinz v. Jenkins,* 115 S. Ct. 1489, 514 U.S. 291 (1995)

[2] *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027 (9th Cir. 2010)

FIRST AMENDED COMPLAINT                            29

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

**4.     Burkemper's filings in support of Motion for Summary Judgment violates the FDCPA**

111.    Collins re-alleges the above factual allegations and incorporates them by reference herein.

112.    In the summary judgment proceedings against Collins in the superior court, , Burkemper stated in her motion that "[i]t is neither uncommon nor difficult for a management company to appropriate accounting records from a prior management company as part of the transition process even though the accounting software used by the two companies are different." This statement contradicts Nova's broadcast failure of the management transition when it sent Collins and other property owners the "Villa Marina Payment and Late Fee Update" in March of 2019 in which Nova admitted that the management transition had been problematic and resulted in widespread problems of account inaccuracies and improper late fees and interest being charged in other cases.

113.    Because Nova's admission of actual and potential account inaccuracies and improper late fees interest being charged to the property owners' accounts are at the center of Collins' grievances, Burkemper's false assurance to the court about the integrity of Nova's accounting records is material to the court's consideration of the same in order to grant or deny summary judgment, and therefore, implicates the FDCPA.

114.    Burkemper filed a flurry of declarations, statements, and ledgers to prove up his personal liability. The amount of the debt, asserted by Burkemper, changed from $21,305.71 to $40,072.65, to $49,425.79, and $44, 092.27. Burkemper's representations to the superior court about the amount of the debt are all false because the starting balance from which her calculation was based was false, and the adjustment that Burkemper had to make, based on Collins' specific objections, resulted in a discrepancy of over $5,000.00. Burkemper's filings infected the summary judgment proceeding with deception in violation of §1692e of the FDCPA.

**5.     Burkemper's filing of Motion for Reconsideration violate the FDCPA**

115.    Collins re-alleges the above factual allegations and incorporates them by reference herein.

FIRST AMENDED COMPLAINT

30

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

116.    Section 1692e prohibits a debt collector from using any false, deceptive or misleading representation or means in connection with the collection of any debt. The false representation may relate to the character, **amount**, or **legal status** of any debt. Burkemper's act of filing of Motion for Reconsideration in the superior court case and attaching "a series of summary ledgers" that ultimately reveals discrepancies in the Defendants' calculation of the amount of the alleged debt hits both prongs of §1692e; the ledgers contain misrepresentations regarding the charges that made up the debt and the total amount of the debt as accurate, and Burkemper's reliance on the ledgers is her use of means that are false, deceptive or misleading in connection with the collection of the debt against Collins. We know the ledgers contain misrepresentations because Burkemper's own calculations arrived at $5,333.52 difference in the amount of the debt she alleges Collins owes.

### 6.    Burkemper and SLP's litigation conduct violated the FDCPA

117.    Collins re-alleges the above factual allegations and incorporates them by eference herein.

118.    Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." While the Act does not define "unfair or unconscionable means" it does provide examples of conduct that could violate the provision. For example, it is a violation to collect any amount unless such amount is expressly authorized. Additionally, courts have defined "unfair or unconscionable means" by relying on the plain meaning of the terms including injustice, partiality, or deception.

119.    A more specific statutory section, to wit, section 1692e(2)(A), proscribes the debt collector's continuing obligation to avoid making a false representation of the amount of the debt after the initial communication. Burkemper and SLP violated this section because they have continued to create more and more ledgers and make more and more representations to the superior court about the nature and amount of the debt allegedly owed by Collins.

120.    SLP and Rachel Burkemper, in addition to seeking a final judgment for money owed and foreclosure decree, have also intercepted rents and obtained custodial receivership, all

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

in an effort to drive Collins' Property into the ground and disallow him from selling it voluntarily, all based on evidence they admitted to be false or inaccurate—where the inaccuracy is not slight but over $5,000 relating to the amount of the debt. Said conduct falls within the ambit of §1692d prohibiting litigation tactics that have the natural tendency to embarrass, upset, or frighten a debtor. Because there is no evidence that the Association would not be able to collect a monetary judgment if Collins is to sell the Property voluntarily, including all of attorney fees and litigation costs incurred by the Association, the Defendants' tactics are not only overreaching, oppressive, but also mean spirited and have a devastating impact upon Collins' financial,  physical and psychological wellbeing in violation of §1692d.

121.    Burkemper's action and conduct as a lawyer in this litigation directly caused the loss of possession and use, depreciation of value, and loss of equity of Collins' Property. Further, SLP and Burkemper's violation of §1692d has resulted in loss of rental income, loss of time from his business of property management and out-of-pocket expenses that Collins has incurred in his continuing effort to ferret out the accounting schemes the Defendants have engaged in.

122.    For an elderly person who depends upon the rental income generated by Unit 173 to support himself and his disabled son, the losses caused by the Defendants have caused Collins severe emotional distress which has manifested itself into various physical symptoms including but not limited to chronic insomnia, upset stomach, recurring headaches, and other side effects from taking Zantac for his stomach pain.

123.    Collins is entitled to actual damages, statutory damages of up to $1,000 for each occurrence or communication, and the costs of the action, together with a reasonable attorney's fee as determined by the court. An award of actual damages may include damages for emotional distress caused by the Defendants' statutory violations. 15 U.S.C. § 1692k(a)(1). Thus, under the FDCPA, §1692k(a)(1), Nova Association Management Partners, LLC, Rachel Burkemper, Esq., and Sound Legal Partners, PLLC, as debt collectors who failed to comply with the FDCPA  are liable to Plaintiff for statutory damages as well as actual damages sustained by him as a result of such failure.

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16ᵗʰ Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

**D.     CLAIM FOUR: NOVA VIOLATED THE WASHINGTON CONSUMER PROTECTION ACT**

124.    Collins re-alleges the above factual allegations and incorporates them by reference herein.

125.    RCW 19.86.090, the Washington Consumer Protection Act, allows anyone who has been injured in his or her busines or property by a violation of the statute to bring a civil action in which he may recover actual damages, trial costs, and attorney fees. The trial court may, in its discretion, award treble damages. Collins would have to prove five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."

126.    Defendant Nova held itself out to be an expert in serving community associations and its members. It boasts on its website that its business is about "Enhancing Community Living Through Communication And Collaboration" and "Protecting Your Most Important Asset." Among its advertised functions are to "Prepare Accurate Financials," "Foster Communication" and "Build A Sense of Community." (Novaamp.com/services). Nova's business, including debt collection services, occurs in trade or commerce. Nova's billing and debt collection schemes in this case proved these advertisements to be false.

127.    Nova's practices of secretly omitting payments or withholding payments for an unreasonable period of time, and returning payments without explanations, are all designed to generate fees and interests from which it profits directly. These practices are deceptive and occurring in commerce. Where timely disclosure of the property owner's account status is central to his ability to be current on the account and to avoid foreclosure, Nova's scheme of delaying, denying and inducing foreclosure has harmed Collins and has the potential of harming others who are similarly situated.

128.    Nova's referral of the Collins Account for a collection lawsuit where it knew or should have known that the lawsuit would be propped up by inaccurate and conflicting Statements of Account, Notices of Outstanding Charges, Ledgers, and that the same false evidence would assist in Nova and the other debt collector to obtain monetary and/or foreclosure

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

judgments, is both unfair and deceptive. The deception is being perpetrated by Nova upon consumers like Collins as well as the court and impacting important the public interest in the integrity of evidence submitted to a court of law, the integrity of the judicial system, and the public perception of the legal profession.

129.     Nova's action, including referral of the Collins Account for debt collection and collection lawsuit directly causes Collins injury including loss of possession, depreciation in value and loss of opportunity to sell his Property at fair market value to preserve equity, and actual damages in time away from his business of property management and substantial out-of-pocket expenses incurred by Collins, including attorney fees and costs to resist the Defendants' unlawful debt collection activity and collection litigation.

### E.     CLAIM FIVE: RACHEL BURKEMPER VIOLATED WASHINGTON CONSUMER PROTECTION ACT

130.     Collins re-alleges the above factual allegations and incorporates them by reference herein.

131.     Lawyers may be subject to consumer protection liability if the suit seeks to recover for acts that relate to "entrepreneurial aspects of the practice of law" and do not involve purely alleged negligence or legal malpractice. The acts taken by Defendant Burkemper against Collins and his Property are intentional acts designed to generate and increase profitability in the form of attorney fees and litigation costs, which relate to the entrepreneurial aspects of her practice of law. Burkemper's acts resemble the act of padding lawyer's bill which has been determined to be actionable under Washington Consumer Protection Act.[3]

132.     Collins is entitled to recover from Rachel Burkemper in a private action under the Consumer Protection Act, Chapter 19.86 RCW, upon proof that she engaged in (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) affecting the public interest, (4) injury to his business or property, and (5) causation.

---

[3] *Rhodes v. Rain*, 195 Wn.App. 235 (2016) (Alleged fabrication of bogus entries after the fact for purpose of attorney's fees is actionable under the CPA).

FIRST AMENDED COMPLAINT                                    34

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

133.     Burkemper's debt collection practices meet all five elements of the Act. Her acts of preparing, signing and sending debt collection letter and debt validation notice to Collins using the mail and the internet, have occurred in trade or commerce. Her acts of filing collection lawsuits, including Lawsuit II against Collins, in King County Superior Court and putting forth evidence in the court's file in an effort to seek monetary and/or foreclosure judgments, occur in trade or commerce and impact important the public interest in the integrity of evidence submitted to a court of law, the integrity of the judicial system, and the public perception of the legal profession.

134.     Burkemper's act of issuing communication and other documents as a debt collector that are obscure, confusing, and inaccurate as to the amount of the debt is a deceptive act or practice. Burkemper's initiation of the lawsuit and filing of lien and lis pendens, her use of a multitude of ledgers in support of her requests for various reliefs, including final summary judgment, her verbal and written representations, including attestation of the accuracy of the ledgers and other proof submitted to the Court, when the evidence was/is in fact inaccurate or erroneous, are all acts of deception.

135.     Burkemper's use of her Bar membership and legal skills to manufacture and place inaccurate or erroneous evidence into the court as means to extract payments from property owners is unfair and affects the public perception of the legal profession negatively. Rachel Burkemper has filed many lawsuits in King County Superior Court based on the same pattern of debt collection. Therefore, a jury could find that her deceptive acts and practices have the potential for repetition and are injurious to the public.

136.     Burkemper' unfair and deceptive practices have caused the Collins Account to be kept in a perpetual state of delinquency, and incurring tens of thousands of dollars in Late Fees, Interests, Attorney Fees, and Litigation Costs. Burkemper's actions including filing of Notice of Claim of Lien, Lawsuit II, lis pendens, and obtaining rent interception and custodial receivership directly caused injury to Collins including loss of possession, depreciation of valuation of his Property, and loss of equity. Her actions also caused Collins actual damages including loss of

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

rental income, time away from his business of property management, substantial out-of-pocket expenses, including attorney fees and costs relating to the resistance against unlawful debt collection activities and collection litigation.

F.   **CLAIM SIX: SOUND LEGAL PARTNERS PLLC VIOLATED WASHINGTON CONSUMER PROTECTION ACT**

137.   Collins re-alleges the above factual allegations and incorporates them by reference herein.

138.   SPL has acted as a conduit through which Burkemper, its partner/owner, carries out her unlawful act. It is through the law firm's letterhead, pleading form, and other documents bearing the firm's insignia that Burkemper conveys debt collection messages, including demands for payment, and formal filings of liens and lawsuits. SLP extends its resources including the telephone and the internet to Burkemper which she uses to transmit documents, including court filings. Demand for payment of attorney fees, and collection of the same is made in the name of SLP. In allowing Burkemper to violate the CPA, SLP is liable to Collins for injury including loss of possession, depreciation of value and loss of equity. SLP also caused Collins actual damages including loss of rental income, time away from his business of property management, and substantial out-of-pocket expenses, including attorney fees and costs relating to the resistance against unlawful debt collection activities and collection litigation.

G.   **CLAIM SEVEN: NOVA COMMITTED PER SE VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT**

139.   Collins re-alleges the above factual allegations and incorporates them by reference herein.

140.   To recover for a per se violation of the Consumer Protection Act, Collins must prove: (1) the existence of a pertinent statute; (2) its violation; (3) such violation was the proximate cause of damages sustained; and (4) he was within the class of people the statute sought to protect. Once Collins establishes a per se violation of the CPA, he needs to only demonstrate that the violation proximately caused injury to his person or property.

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

141.    Congress enacted FDCPA to eliminate abuse debt collection practices by debt collectors. The Act is intended to protect consumers like Collins. Nova's pattern of billing which includes omitting payments, delaying payments, and returning payments after withholding them for an unreasonable time period, resulting in unauthorized charges of Late Fees and Interest thereby inflating the amount of the debt and rendering the alleged delinquency incurable violated the FDCPA. Nova's practices of debt collection including sending dunning letters to Collins that failed to comply with the provisions of the FDCPA while refusing to communicate with him in person or over the phone impacted Collins' ability to dispute the debt violated the FDCPA. Nova's referral of Collins' Account for litigation and foreclosure based on the false and inaccurate amount of the debt violated the FDCPA.

142.    As a result of Nova's violations of the FDCPA, Nova has committed per se violation of the CPA. Nova's per se violation of the CPA caused Collins injury in the form of loss of possession, depreciation of value, and loss of equity. Nova's per se violation of the CPA also caused Collins actual damages in the form of loss of rental income, and loss of time that he could devote to his business of management rental property, as well as substantial out-of-pocket expenses including attorney fees and costs.

## H.    CLAIM EIGHT: BURKEMPER AND SLP COMMITTED PER SE VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

143.    Collins re-alleges the above factual allegations and incorporates them by reference herein.

144.    Burkemper and SLP's debt collection pattern and litigation practices violated various provisions of the FDCPA; a federal statute enacted for protection of consumers like Collins. The Defendants sent written communication that either cut short or did away with Collins' right to dispute the debt, and accounting ledgers that are inaccurate and conflict with one another. Their acts of manufacturing such false evidence and submitting the evidence to the superior court and attesting to them as accurate to obtain final judgment and foreclosure decree

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

against Collins constitute violations of the FDCPA.  The Defendants' violations of the FDCPA constitute per se violation of Washington CPA.

145.    Burkemper and SLP's per se violations of the CPA have caused injury to Collins in the form of loss of possession, depreciation of value, and loss of equity. Burkemper and SLP's per se violations of the CPA also caused Collins actual damages in the form of loss of rental income, and loss of time that he could devote to his business of management rental property, as well as substantial out-of-pocket expenses including attorney fees and costs.

**I.    CLAIM NINE: THE DEFENDANTS ENGAGED IN CIVIL CONSPIRACY CAUSING DAMAGES TO PLAINTIFF COLLINS**

146.    A civil conspiracy occurs when two or more persons agreeing to commit an unlawful act, or to commit a lawful act through unlawful means, causing resulting damages to the victim. The Defendants in this case engaged in a business enterprise where each of them plays a supportive role to the others in order to accomplish the collection of monies either through debt collection or judicial judgments, including foreclosure of real property.

147.    The Association, Villa Marina, at the front end of this business enterprise, is responsible for informing consumers with information about assessments made against their real property, and the status of their individual accounts. Villa Marina selects its own debt collection manager, Nova, and allows Nova to handle the accounting and collection of these consumer accounts. Nova, under Villa Marina's name, collects and applies payments, and communicating with consumers about the status of their accounts. It is Nova which declares certain accounts to be delinquent and makes referrals to Defendants SLP and Rachel Rapp Burkemper for legal actions. Nova, SLP and Burkemper all manufacture, fabricate, or otherwise make up the evidence to be submitted to the court to obtain judgment against the consumers.

148.    In this case, each of these Defendants acts as a link in the chain that resulted in tremendous damages to Plaintiff Collins. Villa Marina caused for Statement of Account to be transmitted to Collins which shows the manipulations of the initial credit that existed in March of 2017. Thereafter, Villa Marina provided Nova with authority and discretion to bill and collect

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

payments from Collins for ongoing assessments. Nova, while admitting to having difficulty making the transition as Manager of Villa Marina, nonetheless, perpetuated the inaccuracies of the Collins Account. Nova engaged in the practices of omitting payments, delaying the posting of payments, and returning payments made by Collins after considerable time, or the purpose of charging late fees and interests, and declaring the account to be delinquent.

149.    Nova sent dunning letters and other debt collection communication that misrepresented the amount that Collins alleged owed and referred the account to Sound Legal Partners and Rachel Burkemper to initiate a lawsuit. Prior to filing suit, Burkemper also sent debt demands to Collins that violated the FDCPA. Thereafter, Burkemper and Sound Legal Partners not only filed accounting documents created in Villa Marina's name, and those created by Nova, but also their own ledgers as evidence in the collection lawsuit. These evidentiary documents are conflicted internally, as well as with one another. Nonetheless, Villa Marina, Nova and Burkemper, vouched for accuracy of these evidentiary documents with their own declarations under penalty of perjury, and sought summary judgment, supplemental judgment, and custodial receivership. As a result of their coordinated effort, Collins was locked out of his Property and denied the ability to voluntary sell it to satisfy the adverse judgment; all of the Defendants have actual knowledge of the common design and the means employed by each of them, and all have relied on one another's information and records, to reach such common design.

150.    Although debt collection itself is not an unlawful purpose, the Defendants have agreed to carry out the activity using unlawful means, and intended for damages to Collins to occur. Damages that resulted include but not limited to, loss of possession, loss of rental income, loss of equity, reputational damages through cancellation of sale listing, and out-of-pocket expenses. The Defendants are jointly and severally liable to Collins

## J.    CLAIM TEN: DECLARATORY AND INJUNCTIVE RELIEF

151.    For the reasons including but not limited to those stated herein, an actual dispute exists between the Plaintiff and the Defendants, which parties have genuine and opposing

FIRST AMENDED COMPLAINT                    39

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

interests, which interests are direct and substantial, and of which a judicial determination will be final and conclusive.

152.    The Plaintiff has been harmed by the debt collection practices of the Defendants and he seeks a declaratory judgment pursuant to RCW 7.24 *et seq.* declaring these acts unlawful debt collection.

153.    A party may seek injunctive relief for violation of the Consumer Protection Act. RCW 19.86.090

154.    Plaintiff seeks injunctive relief from this Court which would enjoin the Defendants from collecting debts in the manner described above from the Plaintiff and from any other person similarly situated.

155.    The Plaintiff seeks an injunction that broadly bars the Defendants from engaging in certain debt collection practices against any debt, as opposed to barring those practices strictly with respect to them alone. [4]

156.    Specifically, Plaintiff seeks an injunction prohibiting Defendants from engaging in unlawful collection tactics, including but not limited to demanding money that is not owed, sending confusing billing ledgers and not properly applying dues money first to the dues and afterwards to attorneys' fees and other charges.

157.    Plaintiff has reason to believe these actions make up a pattern and practice of behavior and have impacted other individuals similarly situated.

158.    Injunctive relief is necessary to prevent further injury to Plaintiff and to Washington public as a whole.

159.    Injunctive relief should therefore issue as described herein.

---

[4] *State v. Kaiser*, 161 Wn.App. 705 (2011) (Upholding injunction that prohibited company from entering into certain agreement with any property owner); *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 796, 295 P.3d 1179, 1192 (2013) (Injunction requiring company to follow Washington law not "overly broad and unenforceable" where company "demonstrated little understanding or regard for Washington law.").

FIRST AMENDED COMPLAINT

40

**HA THU DAO**
**ATTORNEY AT LAW**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

## IV.     __PRAYER FOR RELIEF__

WHEREFORE, having fully set forth facts and legal authorities in support of his claims for relief under the federal Fair Debt Collection Practices and the Washington Consumer Protection Act, against Defendants Nova Association Management Partners, LLC,  Rachel Burkemper, Esq., and Sound Legal Partners, PLLC, John E. Collins prays the Court for the following relief:

a) Declaratory judgment that Defendants' conduct violated FDCPA and the CPA;

b) Injunctive relief barring Defendants from further committing the foregoing described unlawful debt collection and collection litigation practices;

c) Actual damages, including damages for personal humiliation, embarrassment, mental anguish, and emotional distress pursuant to 15 U.S.C. §1692k(a)(1);

d) Statutory damages pursuant to 15 U.S.C. § 1692k and § 1681n-o;

e) Costs and reasonable attorney fees pursuant to 15 U.S.C. §§ 1692k, § 1681n-o;

f) All remedies provided under the Washington Consumer Protection Act (RCW 19.86), including treble damages, plus attorney fees and costs;

g) All damages caused by the conspiracy of the Defendants;

h) For such other and further relief as the Court may deem just and proper;

DATED:  August 31, 2020.

/s/ Ha Thu Dao
Ha Thu Dao, WSBA 21793
Counsel for Plaintiff
10728 16th Ave SW
Seattle, WA 98146
727-269-9334
hadaojd@gmail.com


/s/ Christina L Henry
Christina L Henry, WSBA 31273
Counsel for Plaintiff
HENRY & DEGRAAFF, PS
787 Maynard Ave S
Seattle, WA 98104

HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Tel# 206-330-0595
Fax 206-400-7609

## **CERTIFICATE OF SERVICE**

I certify that a copy of the forgoing has been served upon the following parties via the court's CM/ECF on this 31st day of August, 2020.

Attorneys for Rachel Burkemper & Sound Legal Partners, PLLC
Marc Rosenberg, Esq.
Lee Smart, P.S.
701 Pike Street, #1800
Seattle, WA 98101
206.624.7990
mr@leesmart.com

Attorneys for Defendant Nova Management Partners, LLC
Seth E. Chastain, Esq.
Tyler D. Kerr, Esq.
sechastain@levy-law.com
tyler@levy-law.com
1200 Fifth Avenue, Ste 1850
Seattle, WA 98101
206.626.5444

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 31, 2020

*s/ Christina L Henry*
Christina L Henry

FIRST AMENDED COMPLAINT                    42                    HA THU DAO
ATTORNEY AT LAW
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com