UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN COLLINS, | CASE NO. C20-1206-JCC |
| Plaintiff, | ORDER |
| v. | |
| NOVA ASSOCIATION MANAGEMENT PARTNERS LLC, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion to disqualify defense counsel (Dkt. No. 20). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

## I. BACKGROUND

For the past several years, Defendants Nova Association Management Partners LLC and Villa Marina Association of Apartment Owners have been involved in debt collection litigation against Plaintiff John Collins in King County Superior Court to collect assessment payments relating to his condominium. (*See generally* Dkt. No. 11.) The legal dispute began in 2016 when Villa Marina filed a lawsuit against Plaintiff to collect past due assessments. (*Id*. at 6.) Plaintiff ultimately paid the amount requested by Villa Marina and the lawsuit was resolved through a

Stipulation & Order for Dismissal in March 2017. (*Id*.)

On December 6, 2019, Defendants commenced another collection action against Plaintiff. (*Id*.) On December 26, 2019, Plaintiff met with David von Beck, a partner at the law firm Levy, von Beck, Comstock, P.S., to determine whether to hire Mr. von Beck to represent Plaintiff in the lawsuit. (Dkt. No. 27 at 3.) Following the meeting, Mr. von Beck sent Plaintiff a retainer agreement, which he did not sign. (*Id*. at 2.) Instead, a different lawyer from another firm appeared on Plaintiff's behalf in April 2020. (Dkt. No. 29-5.) On May 14, 2020, Plaintiff called Katie Comstock, another partner at Levy, von Beck, Comstock, P.S., and once again expressed interest in hiring the firm to represent him in the collection dispute. (Dkt. No. 28 at 1–2.) Plaintiff and Ms. Comstock did not communicate further after that call and Plaintiff did not retain Ms. Comstock. (*Id*. at 3.) In August 2020, King County Superior Court entered judgment and a decree of foreclosure against Plaintiff. (Dkt. No. 15 at 4.)

On August 10, 2020, Plaintiff filed the instant complaint alleging that Defendants violated the federal Fair Debt Collection Practices Act and the Washington Consumer Protection Act. (*See generally* Dkt. No. 11.) Seth Chastain, a partner at Levy, von Beck, Comstock, P.S., appeared on behalf of the Defendants in September 2020. (Dkt. No. 13.) In October, Defendants moved to dismiss the complaint for failure to state a claim. (Dkt. No. 17.) In response, Plaintiff moved to disqualify defense counsel because he alleges his discussions with Ms. Comstock and Mr. von Beck created a conflict of interest. (Dkt. No. 20 at 3–4.)

## II. DISCUSSION

When considering a motion to disqualify, the Court retains responsibility for controlling the conduct of lawyers practicing before it. *Trone v. Smith*, 612 F.2d 994, 999 (9th Cir. 1980). In deciding whether to disqualify counsel, the Court looks to the local rules regulating the conduct of the members of its bar. *Avocent Redmond Corp. v. Rose Elecs.*, 491 F. Supp. 2d 1000, 1003 (W.D. Wash. 2007). Attorneys practicing in the Western District of Washington must abide by the Rules of Professional Conduct as promulgated and interpreted by the Washington Supreme

Court ("RPCs"). *See* W.D. Wash. Local Civ. R. 83.3(a)(2). The Court notes that "disqualification is a drastic measure and that it must consider the danger of a motion to disqualify opposing counsel as a litigation tactic." *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1157 (W.D. Wash. 2006).

Plaintiff argues that Levy, von Beck, Comstock should be disqualified for two reasons. First, Plaintiff argues that he is a client of the firm because he consulted with Mr. von Beck and Ms. Comstock. (Dkt. No. 20 at 4.) Accordingly, he argues that defense counsel should be disqualified because those attorneys have a concurrent conflict of interest that is imputed to the entire firm. (*Id*. at 3.) Next, Plaintiff argues that even if he is not a client, he is a prospective client and the Court should disqualify defense counsel because he disclosed information that may be significantly harmful to him in this litigation. (*Id*. at 5.)

### A. Attorney-Client Relationship

The existence of an attorney-client relationship "turns largely on the client's subjective belief that it exists." *In re Disciplinary Proceeding Against McGothlen*, 663 P.2d 1330, 1134 (Wash. 1983). However, the client's belief must be "reasonably formed based on the attending circumstances, including the attorney's words or actions" *State v. Hansen*, 862 P.2d 117, 121 (Wash. 1993) (quoting *Bohn v. Cody*, 832 P.2d 71 (Wash. 1992)). The relationship can be implied by the parties' conduct and need not be consummated by the payment of fees or formalized in a written contract. *McGothlen*, 663 P.2d at 1334. The party claiming the privilege of the attorney-client relationship bears the burden of proving its existence. *Dietz v. Doe*, 935 P.2d 611, 615 (Wash. 1997).

As an initial matter, the Court is skeptical that Plaintiff subjectively believed that he formed an attorney-client relationship with Levy, von Beck, Comstock as a result of the December 26, 2019 meeting with Mr. von Beck. First, three months later, Plaintiff hired a different attorney from a separate law firm to appear for him in the state court litigation. (Dkt. No. 29-5.) If Plaintiff believed Mr. von Beck was already representing him, he would have had

no need to hire another law firm. Next, Plaintiff contacted Ms. Comstock about possible representation in May 2020. Once again, if he believed that he had already hired the firm, he would have had no need to ask about possible representation. It is also hard to believe that Plaintiff subjectively believed that he was a client of the firm after his meeting with Ms. Comstock when a different attorney appeared on his behalf in the state court litigation only ten days later. (Dkt. No. 29-6.) Furthermore, Plaintiff never contacted Ms. Comstock after the meeting, which would be odd if he believed he was a client of the firm. (Dkt. No. 28 at 3.) Finally, when it came time to file the instant federal lawsuit, Plaintiff did not contact Levy, von Beck, Comstock and instead turned to another set of lawyers to draft the complaint and file the suit. (Dkt No. 1-1.) But, even assuming Plaintiff subjectively believed that Levy, von beck, Comstock were his lawyers, such a belief was unreasonable.

Plaintiff argues that his belief that he was a client of defense counsel's law firm was reasonable because he had two separate meetings with different lawyers, Mr. von Beck sent him a retainer agreement to confirm their verbal discussion, and the attorneys shared their opinions about the lawsuit. (Dkt. No. 31 at 3–4.) However, based on all the circumstances, Plaintiff's belief that he was a client was not reasonable.

First, an attorney-client relationship is not formed just because an attorney discusses the relevant subject matter with an individual. *Bohn*, 832 P.2d at 75. In fact, it is often necessary for an attorney to understand the legal dispute to determine whether they would like to represent the individual. *See* Wash. RPC 1.18 cmt. 3.

Second, after his meeting with Mr. von Beck, Plaintiff was left to decide whether to retain the firm by signing the retainer agreement and decided not to. It is settled that the "parties do not create an attorney-client relationship when, during the initial interview, the purported client reserves the right to make a decision as to whether to retain a lawyer." *Eakin Enters. Inc. v. Stratton Ballew*, 2020 WL 1649806, slip op. at 16 (Wash. Ct. App. 2020).

Third, Ms. Comstock and Mr. von Beck provided clear disclaimers during their meetings

with Plaintiff, stating that the firm could not represent him unless he executed a representation agreement and paid a retainer fee. (Dkt. No. 26 at 8–9.) When an attorney makes clear disclaimers regarding representation and does not act inconsistently with those disclaimers, such disclaimers can establish that a person's subjective belief is unreasonable. *See Bohn*, 832 P.2d at 75. Mr. von Beck and Ms. Comstock acted consistently with the disclaimers here when they did not contact Plaintiff after he did not sign and return the agreement and did not perform any legal work for him or appear on his behalf in the litigation. (Dkt. Nos. 27 at 3; 28 at 3.)

Accordingly, the Court FINDS that Plaintiff is not a client of defense counsel.

**B.** **Significantly Harmful Information**

Plaintiff argues that he is a prospective client because he consulted with defense counsel's law firm to seek representation in the state court action against him. (Dkt. No. 20 at 4.) He claims he divulged information during his consultations with defense counsel's law firm that is "significantly harmful" to his interests in this lawsuit. Specifically, Plaintiff claims he disclosed (1) information about his finances and property that he believed would support potential defenses against the collection actions; (2) that he believed Defendants were manipulating his account; and (3) that he was interested in countersuing Defendants based on their collection practices. (Dkt. Nos. 21 at 2; 31 at 5.) Accordingly, he argues that RPC 1.18 requires the Court to disqualify Levy, von beck, Comstock.

Under Rule 1.18(a), any "person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client." A lawyer cannot "represent a client with interests materially adverse to those of a prospective client in the same or substantially the same matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." RPC 1.18(c). For the purposes of Rule 1.18, "significantly harmful" means more than de minimis harm. RPC 1.18 cmt. 12. To establish that defense counsel should be disqualified, Plaintiff must explain what information he disclosed, why it was not already public or known to Defendants, and why it

would be significantly harmful to Plaintiff. *Goldmanis v. Insinger*, 2014 WL 3739430, slip op. at 5 (W.D. Wash. 2014).

The Court agrees that Plaintiff is a prospective client under RPC 1.18 because he met with Levy, von Beck, Comstock about the state court proceeding against him. However, Plaintiff's argument that RPC 1.18(c) prohibits defense counsel from representing Defendants is not persuasive. Even if the Court were to assume the veracity of Plaintiff's allegations, they nowhere describe the specific information that he allegedly disclosed to Ms. Comstock or Mr. von Beck that could be "significantly harmful" to Plaintiff.

First, Plaintiff claims that he "revealed personal and financial information about himself," which could be significantly harmful to him in the current litigation. (Dkt. No. 20 at 2, 5.) However, Plaintiff does not provide enough detail for the Court to determine what that information is or whether it is "significantly harmful" to Plaintiff. For instance, Plaintiff does not explain what facts about his property or finances he disclosed, whether the facts were already readily available to Defendants, or how these facts would be harmful to him. Moreover, Ms. Comstock's notes do not indicate that Plaintiff disclosed any information that was not already in the public record. (Dkt. No. 28 at 2.) Accordingly, the Court rejects Plaintiff's argument that the information he allegedly provided about his finances or property was significantly harmful.

Next, Plaintiff alleges that he disclosed "significantly harmful" information when he told defense counsel that he believed Defendants were manipulating his account. (Dkt. No. 20 at 2.) However, information that is already known by Defendants or is readily available to them cannot be significantly harmful. *Goldmanis*, 2014 WL 3739430, slip op. at 4; *cf.* WSBA Advisory Opinion 2080 ("[T]he Model Rules do not prohibit the use to the disadvantage of the would-be client of information relating to the representation once the information becomes generally known.") (quoting ABA Comm. on Ethics & Pro. Resp., Formal Op. 90-358 (1990)). Plaintiff made this argument in his state court filings in April 2020 and June 2020, months before defense counsel appeared on behalf of Defendants. *See* Defendant's Opposition to Plaintiff's Motion for

ORDER
C20-1206-JCC
PAGE - 6

Summary Judgment at 2, *Villa Marina Ass'n v. Collins*, Case No. 19-2-32346-9 SEA (Wash. Super. Ct. 2020) (Dkt. No. 19) (alleging Defendants received checks from Plaintiff, declined to cash them, and then assessed late fees against him); Defendant's Opposition to Plaintiff's Second Motion for Summary Judgment at 8, *Villa Marina Ass'n v. Collins*, Case No. 19-2-32346-9 SEA (Wash. Super. Ct. 2020) (Dkt. No. 57) (stating that Defendants were engaging in "unfair and deceptive" conduct by "posting payments months after that payment has been received for purposes of collecting greater interest and late fees").[1] Plaintiff has not shown that his belief that Defendants manipulated his account was not already public or known to Defendants. Accordingly, Plaintiff has failed to show that the information is "significantly harmful."

Finally, Plaintiff argues that he told defense counsel that he intended to file a counterclaim against the Defendants, which is "significantly harmful" information. (Dkt. No. 20 at 2.) However, Plaintiff's intent to assert a counterclaim could not be significantly harmful in this case because Plaintiff had already filed this lawsuit when defense counsel began representing the Defendants.

In sum, Plaintiff does not describe the facts he allegedly disclosed to defense counsel in sufficient detail for the Court to conclude that the disclosure was "significantly harmful." Moreover, the only information that Plaintiff identifies with any degree of specificity was discussed in earlier publicly filed court documents, meaning it could not be significantly harmful if shared with defense counsel. Accordingly, the Court does not need to determine whether defense counsel's screening procedures were accurate.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to disqualify defense counsel (Dkt. No. 20) is DENIED.

---

[1] Defendants purported to put these documents in the record but did not include them in their filings with this Court. Even so, the Court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see also* Fed. R. Evid. 201(c)(1) (authorizing the Court to "take judicial notice on its own").

ORDER
C20-1206-JCC
PAGE - 7

DATED this 28th day of May 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE