THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN E. COLLINS, JR., | CASE NO. C20-1206-JCC |
| Plaintiff, | ORDER |
| v. | |
| NOVA ASSOCIATION MANAGEMENT PARTNERS LLC, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Rachel R. Burkemper's and Sound Legal Partners, LLC ("SLP") (the "moving defendants") renewed motion to dismiss (Dkt. No. 51). Having thoroughly considered the briefing and the relevant record, the Court GRANTS the motion in part and DENIES the motion in part as described below for the reasons explained herein.

## I.    BACKGROUND

This case follows a protracted fee dispute and lien foreclosure between Plaintiff here, John Collins, Jr. (a condominium owner), and his homeowners' association, Villa Marina Association of Apartment Owners ("Villa Marina"). (*See* Dkt. No. 11 at 6–10.) It involves allegedly inaccurate and inflated fee ledgers (as prepared by Villa Marina's property manager, Nova Association Management Partners, LLC ("Nova")), and allegedly misleading collection actions taken by Villa Marina's lawyer, Ms. Burkemper, and her law firm, SLP, culminating in the lien foreclosure. (*See id.*) Mr. Collins filed suit here (during the pendency of the foreclosure

action) asserting Fair Debt Collection Practices Act ("FDCPA") and Washington Consumer

Protection Act ("CPA") violations (amongst other causes of action) against all the parties noted

above. (Dkt. Nos. 1, 11.) The Court articulated Mr. Collins' specific allegations in a prior order.

(*See* Dkt. No. 40 at 1–3.) It will not repeat that information here.

Following a lengthy stay of this case during the pendency of the foreclosure action, the

moving defendants now seek dismissal pursuant to Rule 12(b)(6).[1] (Dkt. No. 51.) Supporting

arguments are as follows: (a) Villa Marina's state court foreclosure judgment defeats claims

predicated on inaccurate reporting of amounts owing; (b) the moving defendants complied with

the FDCPA in communicating with Mr. Collins; (c) as a matter of law, CPA and/or FDCPA

claims cannot be brought against a lawyer for conduct supporting the foreclosure action; (d) Mr.

Collins failed to otherwise plausibly assert the elements of a CPA claim; (e) Mr. Collins failed to

adequately plead civil conspiracy; and, finally, (f) the pleaded declaratory and/or injunctive relief

claims are inapt. (*See* Dkt. No. 51 at 6–25.) Mr. Collins, in opposing, challenges both the

motion's procedural propriety and its substantive arguments. (*See generally* Dkt. No. 53.)

---

[1] By way of review, Mr. Collins filed his complaint(s) in 2020. (*See* Dkt. Nos. 1, 11.) The moving defendants first moved to dismiss shortly thereafter. (Dkt. No. 15.) At the time, Villa Marina was pursuing a lien foreclosure for monies due (along with fees and costs) through a state court action. (*See* Dkt. No. 52 at 4–31) (docket in *Villa Marina Association of Apartment Owners v. Collins*, King County Superior Court Case No. 19-2-32346-9 SEA).

The Court stayed this matter pending resolution of that proceeding, in accordance with *Younger v. Harris*, 401 U.S. 37 (1971) and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). (*See* Dkt. No. 40 at 1–8.) The Court further denied the outstanding motions to dismiss (Dkt. Nos. 15, 17) without prejudice, pending resolution of the foreclosure action. (*See* Dkt. No. 40 at 1–8.) That action took years to resolve. This is because, following an initial judgment in Villa Marina's favor, the Washington Court of Appeals remanded the matter for further proceedings. (*See* Dkt. No. 52 at 4–88.) The case then went through another direct review before, finally, the Washington Supreme Court denied Mr. Collins' petition for discretionary review. (*Id.*)

This Court then lifted the stay and issued an initial scheduling order. (Dkt. Nos. 48, 50.) Shortly thereafter, the moving defendants renewed their motion to dismiss. (Dkt. No. 51.)

1

## II.    DISCUSSION

2

### A.    Citations Contained in Plaintiff's Opposition Brief (Dkt. No. 53)

3

As a preliminary matter, the Court took note of the non-existent and inaccurate legal

4

citation incorporated within Mr. Collins' opposition brief (Dkt. No. 53) (including citations on

5

pages 5, 6, 8–10, 13), as pointed out by the moving defendants on reply. (*See* Dkt. No. 54 at 1–

6

2.) These citations are troubling but, before going further on this issue, more information is

7

needed. Plaintiff's counsel shall file a notice containing a <u>complete</u> list of nonexistent, incorrect,

8

and or inapt legal citations contained in the opposition brief (Dkt. No. 53) with an explanation as

9

to how and/or why each were included in counsel's brief.

10

### B.    Procedural Issue(s)

11

Turning to the motion to dismiss, which Mr. Collins first contends is improperly

12

successive. (*See* Dkt. No. 53 at 5–6) (citing Fed. R. Civ. P. 12(g)(2)). Specifically, says Mr.

13

Collins, the motion violates Rule 12(g)(2) and is duplicative of the moving defendants'

14

previously filed motion to dismiss. (*Id.*) This argument fails to appreciate the import of the

15

Court's disposition of that motion, which was to deny it *without prejudice*. (*See* Dkt. No. 40 at

16

7.) The Court intended this to work as a complete reboot, *i.e.*, as if the motion never happened.[2]

17

This is why the Court reset the Rule 12(a) and Rule 26 deadlines when it lifted the stay here. (*See*

18

Dkt. No. 50.) Thus, the present motion does not violate Rule 12(g)(2) nor is it impermissibly

19

successive. Mr. Collins' procedural attack is without merit.

20

### C.    Substantive Argument(s)

21

With the preliminary issues resolved, the Court now addresses Mr. Collins' substantive

22

23

---

[2] This is not an unusual nor unprecedented approach. *See, e.g.*, *Rosenow v. Facebook, Inc.*, 2021
WL 5828010, slip op. at 2 (S.D. Cal. 2021) (permitting a successive motion to dismiss once stay

24

is lifted); *PepperBall Techs., Inc. v. Sec. with Adv. Tech., Inc.*, 2008 WL 11508688, slip op. at 4
(S.D. Cal. 2008) (same); *Van Fossen v. Sierra Sands Unified Sch. Dist.*, 2006 WL 738717, slip

25

op. at 5 (E.D. Cal. 2006) (same); *Austin v. Transamerica Life Ins. Co.*, 2021 WL 1930313, slip
op. at 4 (D. Ariz. 2021) (allowing refiling of motion to include additional cited legal authority).

26

And it falls within the Court's inherent discretion. *See Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604, 607 (9th Cir. 1992).

challenges to the 12(b)(6) motion. (*See* Dkt. No. 53 at 6–18.)

                1.      <u>Legal Standard – Adequacy of a Claim</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint fails to state a claim if it lacks either a cognizable legal theory or sufficient factual allegations to support that claim. *Zixiang v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing such a motion, the Court may consider (along with the complaint) those documents duly incorporated into the complaint by reference, *see Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), and/or matters of judicial notice, such as public records and court documents, *see Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); Fed. R. Evid. 201. Here, that includes records of the state court lien foreclosure proceeding. (Dkt. Nos. 49, 52.)

                2.      <u>Import of State Court Judgment – In General</u>

The moving defendants contend that, because the state court issued judgment in Villa Marina's favor based on the same ledger that Mr. Collins contends was not accurate,[3] claims predicated on this inaccuracy are precluded and cannot be plausibly alleged. (*See* Dkt. No. 51 at 5–6, 54 at 4–5.) To find otherwise would violate full faith and credit and the *Rooker-Feldman*[4] doctrine. (*Id.*) (citing 28 U.S.C. § 1738; *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982); *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998); *Jordahl v. Democratic*

---

[3] Mr. Collins alleges that Villa Marina's ledger contained substantial errors and mysterious charges. (*See* Dkt. No. 11 at 6–12.) Thus, its incorporation into Ms. Burkemper's and SLP's communications with him and the state court filings was misleading and/or deceptive (and inherently violative of the FDCPA and CPA). (*Id.* at 12–19; *see, e.g.*, Dkt. Nos. 11-3, 11-5, 11-6.) This, says Mr. Collins, supports all resulting claims relevant to the instant motion (at least in part). (*See* Dkt. Nos. 11 at 24–32, 34–40, 53 at 9–18.)

[4] *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 485 (1983).

ORDER
C20-1206-JCC
PAGE - 4

*Party of Virginia*, 122 F.3d 192, 199 (4th Cir. 1997); *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)). The Court agrees—to a point.

To the extent the moving defendants' communications and their court filings relied on the same or an equivalent ledger to what Villa Marina received judgment on, such claims fail as a matter of law, as preemption would indeed apply. *See Roberts v. WMC Secured Assets Corp.*, 2010 WL 11623551, slip op. at 8 (D. Or. 2010) (citing *Kremer*, 456 U.S. at 466; *Noel v. Hall*, 341 F.3d 1148, 1160 (9th Cir. 2003)). Nor is it lost on the Court that Mr. Collins' complaint preceded Villa Marina's judgment on the foreclosure action. It stands to reason, then, that the complaint does not clearly distinguish between the ledgers balance(s) ostensibly ratified by the state court and those which were not. (*See generally* Dkt. No. 11.) Thus, at least at present, claims predicated on an inaccurate ledger are too unclear to be adequately pleaded.

Accordingly, the Court DISMISSES all claims wholly supported by allegations of misleading and/or deceptive accounting, whether they be FDCPA, CPA, or other claims. But it will provide Mr. Collins with leave to amend, to allow him to clarify which balances the state court ratified and which it did not.

### 3.    FDCPA Violations (Count III)

Of course, inaccurate and/or misleading ledger balances are not the only alleged violation here. (*See generally* Dkt. No. 11.) The moving defendants served as Nova and Villa Marina's debt collector (in addition to serving as their legal representative). (*See, e.g.*, Dkt. No. 11 at 3–4.) Thus, they were subject to all aspects of the FDCPA (at least when serving in this role),[5] *see*

---

[5] The court evaluates compliance with the FDCPA by viewing the defendant's conduct from the perspective of the "least sophisticated debtor." *See, e.g.*, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). This objective standard protects gullible, shrewd, ignorant, unthinking, and credulous consumers alike. *Id.* It applies even if the recipient of a communication is "unusually savvy," *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011), or did not actually rely on the debt collector's representation, *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1117 (9th Cir. 2014). Unlike a "reasonable" person, the least sophisticated debtor "is comparatively uninformed and naive about financial matters and functions as an 'average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence.'" *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1196 (9th Cir. 2019). Still, this person is not literally "the *least* intelligent consumer in this

*Brown v. Transworld Sys. Inc.*, 646 F. Supp. 3d 1328, 1340 (W.D. Wash. 2022). *See* 15 U.S.C. §§ 1692–1692p. The moving defendants contend that their actions complied with the FDCPA in all respects. Thus, they move to dismiss all alleged FDCPA violations as either inadequately pleaded or because they fail as a matter of law. (*See* Dkt. No. 51 at 6–11.) The Court addresses each, in turn, below.

### i.    Debt Validation (15 U.S.C. § 1692g)

Amongst the FDCPA's requirements is that a debt collector first notify the debtor of the amount of the debt, the creditor's identity, and the debtor's right to dispute and obtain verification of the debt within 30 days of receiving the notice. *See* 15 U.S.C. § 1692g(a). In addition, the debt collector cannot do or say anything during the subsequent 30-day validation period to "overshadow" or contradict this notice of the debtor's rights. § 1692g(b).[6]

The moving defendants' initial communication (Dkt. No. 11-3) contained multiple payment deadlines—some of them sooner than the 30-day validation period. (*See* Dkt. No. 11 at 26.) The moving defendants argue that this is entirely appropriate, based on out-of-circuit authority. (Dkt. No. 51 at 7–8) (citing, *e.g.*, *Miller v. McCalla, Raymer, Padric, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000)). But the cited cases are inapposite. *Miller*, for example, holds that debt collectors can avoid claims that they failed to state "the amount" of a debt if they explain that the sum might fluctuate daily; it says nothing about listing multiple due dates. 214 F.3d at 876. The plain implication of the multiple dates is that debtor would be better off paying earlier than later. Regardless, the Court need not decide whether this would confuse

---

nation of [over] 300 million people," *id.*, and does not adopt "bizarre, idiosyncratic, or peculiar misinterpretations," *Gonzales*, 660 F.3d at 1062.

[6] Overshadowing or inconsistency occurs where the language in the notice would 'confuse a least sophisticated debtor' as to her validation rights.'" *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 991 (9th Cir. 2017) (quoting *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997)). Demanding payment before the 30-day validation period expires is one way to violate this rule. *Mashiri*, 845 F.3d at 991. But the touchstone of overshadowing is that "the unsophisticated consumer is to be protected against confusion whatever form it takes." *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997).

the least sophisticated debtor because dismissal is improper for another reason.

The moving defendants also say there was no overshadowing because "the only express demand for payment [in the initial communication] is a due date of November 12, 2019, a date after the 30-day validation period." (Dkt. No. 51 at 8.) But this argument fails under *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984 (9th Cir. 2017). There, the Ninth Circuit held that a notice demanding payment within 35 days of the date of the notice violated § 1692g(b) because the validation period runs from *receipt* of the letter, not sending; by the time of receipt, there might be less than 30 days left. *Id.* at 991. "Moreover, even if the debtor received the letter promptly," the debtor would probably have to mail the payment before the 30th day of the dispute period for it to arrive on time. *Id.* Here, the initial communication correctly specifies 30 days from receipt versus the date of the letter itself. (Dkt. No. 11-3 at 2.) But it also demands payment "no later than November 12, 2019." (*Id.* at 3.) That is the same as demanding payment within 34 days from October 9, 2019, the date of the communication. This letter thus violates § 1692g(b) by demanding payment earlier than *Mashiri* permits.

Mr. Collins also alleges that the moving defendants violated § 1692g by recording a lien prior to the expiration of the 30-day period. (*See* Dkt. No. 11 at 27.) However, "[c]ollection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period" unless the consumer disputes the debt. 15 U.S.C. § 1692g(b). In other words, it was permissible to seek a lien *before* Mr. Collins disputed the debt as long as it would not confuse the least sophisticated debtor as to their statutory dispute rights. *See Shimek v. Weissmann, Nowak, Curry & Wilco, P.C.*, 374 F.3d 1011, (11th Cir. 2004) ("A debt collector's contemporaneous filing of a lien . . . and the sending of a dunning letter to a consumer prior to the consumer requesting verification of that debt does not violate the FDCPA."). And Mr. Collins alleges nothing suggesting that it would. The Court thus DISMISSES FDCPA claims based on this previously recorded lien, but not the overshadowing-based claims.

*ii.  False or Misleading Representations (15 U.S.C. § 1692e)*

The FDCPA also forbids misrepresenting "the character, amount, or legal status" of the debt. 15 U.S.C. § 1692e(2)(A). This is a strict liability statute, so a plaintiff need not establish scienter. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006). "A debt collection letter is deceptive where it can reasonably be read to have two or more different meanings, one of which is inaccurate." *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1062 (9th Cir. 2011).

The moving defendants again cite *Miller* to argue that Mr. Collins fails to state a claim based on an alleged misrepresentation of the amount of his debt included in their initial communication. (Dkt. No. 51 at 9.) While there is nothing inherently misleading about listing amounts due on different dates to show how a debt will increase, the letter did it in a way that creates confusion about how the amounts were calculated and whether they were accurate. It says, for example, that the amounts due on October 16 and November 1, 2019, "includ[e] $229.15 final payment processing." (Dkt. No. 11-3 at 3.) But it does not say whether the amount due on November 19, 2019, also includes that fee. Since Villa Marina owners never authorized this fee, (Dkt. No. 11 at 13), this is material information. The letter also lists two different amounts owing as of October 9, 2019: $7,321.47 in the text of the letter, and $7,092.32 in the attached lien notice. (Dkt. No. 11-3 at 3–4.) These inconsistent, confusing, and possibly misleading figures are sufficient to support the notion that the letter plausibly violates § 1692e(2)(A).

*iii.  Harassment or Abuse (§ 1692d) and Unfair Practices (§ 1692f)*

Finally, the FDCPA forbids "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d Similarly, it prohibits using "unfair or unconscionable means . . . to collect any debt." 15 U.S.C. § 1692f. Mr. Collins asserts that the moving defendants violated these statutes by obtaining custodial receivership of his property, intercepting rent from his tenants, and refusing to remove

the lien so he could sell his condo. (Dkt No. 11 at 16–17, 31–32.) Trouble is, this conduct is precisely what Washington law authorizes in this circumstance. Under RCW 64.32.200(2):

> All sums assessed by the association . . . but unpaid for the share of the common expenses chargeable to any apartment shall constitute a lien on such apartment . . . . Such lien . . . may be foreclosed by suit by the manager or board of directors . . . . In any such foreclosure the apartment owner shall be required to pay a reasonable rental for the apartment, if so provided in the bylaws, and the plaintiff in such foreclosures shall be entitled to the appointment of a receiver to collect the same.

Moreover, the state appellate court affirmed the trial court's appointment of a receiver here. (Dkt. No. 39-1). Thus, the moving defendants' use of these remedies did not violate the FDCPA. *See, e.g.*, *Zizlsperger v. Maxwell & Morgan PC*, 565 F. App'x 636 (9th Cir. 2014) (implying that garnishing wages in accordance with a court order does not violate the FDCPA); *cf.* 15 U.S.C. § 1692c(b) (authorizing otherwise-forbidden communications with third parties with "the express permission of a court . . . , or as reasonably necessary to effectuate a postjudgment judicial remedy.") Thus, the Court dismisses FDCPA claims predicated on these allegations, as they fail as a matter of law.

4.     Conduct During Foreclosure Proceeding

As previously indicated, *see supra* Part II.C.2., Mr. Collins did not adequately plead any claims based on the moving defendants' incorporation of inaccurate ledger balances into communications or state court filings. Nor can FDCPA claims survive if they relate to communications once counsel represented Mr. Collins. *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir. 2007). This is because "[c]ongress viewed attorneys as intermediaries able to bear the brunt of overreaching debt collection practices from which debtors and their loved ones should be protected." *Id.*[7] Thus, such claims fail here as a matter of

---

[7] *Guerrero*'s reasoning—that communications which might confuse an unsophisticated debtor will not deceive the debtor's lawyer—supports applying the holding even to communications that an attorney presumably relays to a client, so long as there is no direct contact with the debtor. *See Angel v. Am. Recovery Servs. Inc.*, 2012 WL 3594371, slip op. at 2 (W.D. Wash. 2012) (rejecting claim based on voicemail to attorney where the plaintiff made "no allegation that ARSI threatened or attempted to contact [her] directly."); *Stover v. Bishop, White, Marshall*

law.

Finally, the CPA claims associated with the foreclosure proceeding also fail as a matter of law but for its own reason: the judicial action privilege. *See Jeckle v. Crotty*, 85 P.3d 931, 938 (Wash. Ct. App. 2004). It applies to acts in support of such proceedings (amongst other litigation) because this is, by its very nature, non-entrepreneurial conduct, *i.e.*, not engaged in pursuit of a "trade or commerce," *i.e.*, that of a debt collector. *See Anglin v. Merchants Credit Corp.*, 2020 WL 4000966, slip op. at 6 (W.D. Wash. 2020), *aff'd*, 2022 WL 964216 (9th Cir. 2022).

Accordingly, the Court DISMISSES FDCPA claims to the extent they are based on the moving defendants' communication with Mr. Collins once represented by counsel, and all CPA claims based on the moving defendants' conduct supporting the foreclosure proceeding.

5.   Remaining CPA Claim(s) (Counts V, VI, VIII)

Ordinarily, to state a CPA claim, a plaintiff must demonstrate (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) impacting the public interest, (4) an injury to the plaintiff's business or property, and (5) legal causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). But a *per se* CPA claim truncates the first three elements—so long as the defendant violated "a statute that contains a specific legislative declaration of public interest impact." RCW 19.86.093(2). The FDCPA satisfies this requirement. *See Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 897 (Wash. 2009) (holding that violation of a debt collection regulation constitutes a *per se* CPA violation). As a result, only damages and causation are at issue here, *see Keyes v. Bollinger*, 640 P.2d 1077, 1080–81 (Wash. Ct. App. 1982), at least for the remaining adequately pleaded and colorable FDCPA violations: 15 U.S.C. § 1692g(b) ("overshadowing") and § 1692e (misleading representations). *See supra* Parts II.C.3.(i)–(ii).

---

*& Weibel, P.S.*, 2011 WL 3421554, slip op. at 3 (E.D. Wash. 2011) (contradiction in attachments to summary judgment motion served on consumer's counsel were not actionable).

Turning to the issue, then, of resulting damages: according to the complaint, Mr. Collins' account was "in a perpetual state of delinquency" which put him further into debt than he otherwise would be. (*See* Dkt. Nos. 11 at 35.) Of course, the first hurdle to recovery for this damage is the preemption barrier described above. *See supra* Part II.C.2. This largely negates such damages. And to the extent colorable damages remain, it is not clear from the complaint that the moving defendants, as opposed to Villa Marina and Nova, were at fault (*i.e.*, were the one to charge Mr. Collins the fees). (*See* Dkt. No. 11 at 6–7.) Given this lack of clarity. all that really remains for the Court to consider are conclusory allegations. Relatedly, Mr. Collins neither explains why nor alleges that the moving defendants charged him for anything they did not actually bill to Villa Marina. (*See generally id.*) Nor does he allege, for example, that the communications prompted him to hire a lawyer or spend money investigating. (*See generally id.*) Admittedly, the complaint points to his loss of rental income and of the right to use his property or sell it for full value, and eventual foreclosure. (*Id.* at 35–36.) But the proximate cause of this was Mr. Collins's unpaid debt (which, again, as described above is largely subject to preemption, *see supra* Part II.C.2., not anything unlawful that the moving defendants did).[8]

Given all this, the Court finds that Mr. Collins fails to state *any* CPA claim against the moving defendants. Thus, the Court DISMISSES all CPA claims (not addressed above) as inadequately pleaded. Because a portion of this claim may be curable through amendment, the Court will provide Mr. Collins leave to do so.

6.    Civil Conspiracy (Count XI)

A civil conspiracy requires (1) two or more people combining to do something unlawful (or something lawful by unlawful means); and (2) entering an agreement to accomplish the

---

[8] As far as the Court can glean, Mr. Collins's only potentially cognizable CPA allegations are that the moving defendants' communications forced him to take "time away from his business of property management" and incur expenses "relating to the resistance of unlawful debt collection activities," separate from defending the foreclosure action. (Dkt. No. 11 at 36.) But without more, these allegations are insufficient because they do not explain how the moving defendants' non-foreclosure conduct took time away from his business or forced him to incur expense.

conspiracy. *Ferrie v. Woodford Research*, LLC, 2020 WL 3971343, slip op. at 7 (W.D. Wash. 2020) (citations omitted). "Mere suspicion or commonality of interest is insufficient to prove a conspiracy." *Id.* Rather, a plaintiff must allege facts from which the Court can "reasonably infer that [the defendants] entered into an agreement." *Id.* Mr. Collins fails to do this. He alleges that each Defendant, including the moving defendants, was involved in events that led to his foreclosure. (Dkt. No. 11 at 38–39.) But he does not plausibly allege anything beyond representation or agency, such as meetings or communications, from which the Court can infer that they *mutually agreed* to collect his debts in an unlawful way.

The Court DISMISSES the civil conspiracy claim against the moving defendants as inadequately pleaded.

### 7.   Declaratory/Injunctive Relief (Count X)

Finally, Mr. Collins seeks a judicial declaration that the moving defendants' debt collection practices are unlawful. (Dkt. No. 11 at 40.) The Court has never understood why litigants file declaratory judgment claims repeating claims for affirmative relief. Mr. Collins, like many others, fails to state a declaratory judgment claim. *See, e.g.*, *Kho v. Wells Fargo & Co.*, 2012 WL 3240041, slip op. at 9 (C.D. Cal. 2012) ("Plaintiff's claim for declaratory relief . . . will be resolved by other claims for relief and is therefore superfluous and unnecessary.").

The injunctive relief claim is deficient too. A threshold requirement for injunctive relief is the likelihood of irreparable injury if the relief is not granted. *See, e.g., Idaho Rivers United v. U.S. Army Corps. of Engineers*, 156 F. Supp. 3d 1252, 1259 (W.D. Wash. 2015). Mr. Collins cannot demonstrate this because he cannot allege that the moving defendants' conduct is ongoing or that recurring violations of the CPA will befall him or anyone else going forward, as the foreclosure action here is complete. (*See* Dkt. 52 at 4–31.)

### 8.   Leave to Amend

If the Court finds that a complaint fails to state a plausible claim for relief, it need not provide leave to amend when it is "clear . . . that the complaint could not be saved by any

amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *see Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (leave to amend need not be provided when doing so would be futile). As noted above, it is possible that claims predicated on inaccurate and/or misleading accounting might be adequately pleaded, along with other claims simply suffering from a lack of supporting allegations (rather than those that fail as a matter of law.) Thus, leave to amend is warranted for these claims. An amended complaint pursuant to the leave provided above and below, if filed, is due 21 days from the date of this order. This leave has no impact on the preliminary case schedule. (*See* Dkt. No. 50.)

## III.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion to dismiss (Dkt. No. 51) is GRANTED in part, as follows:

1. Claims against the moving defendants based on inaccurate or misleading ledger(s), *see supra* Part II.C.2., are DISMISSED, with leave to file an amended complaint (solely addressing the deficiency noted herein);

2. The FDCPA claim relating to a pre-foreclosure lien recording, *see supra* Part II.C.3.(i)., and a court-appointed receiver, *see supra* Part II.C.3.(iii)., is DISMISSED;

3. The FDCPA and CPA claims based on the moving defendants' post-foreclosure conduct, *see supra* Part II.C.4, are DISMISSED;

4. All remaining CPA claims, *see supra* Part II.C.5, are DISMISSED, with leave to amend (solely addressing the deficiencies noted herein);

5. The civil conspiracy claim, *see supra* Part II.C.6, is DISMISSED; with leave to amend (solely addressing the deficiencies noted herein);

6. The declaratory and injunctive relief claim(s), *see supra* Part II.C.7, are DISMISSED; and

7. The dismissals above are *with* prejudice.

Finally, Plaintiff's counsel is ORDERED to comply with the Court's directive above, *see supra* Part II.A., within 14 days from the date of this order and explain how non-existent and inaccurate citations made their way into her opposition brief.

//

//

ORDER
C20-1206-JCC
PAGE - 13

1    DATED this 13th day of January 2026.

2

3

4    _____

5    John C. Coughenour
     UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
C20-1206-JCC
PAGE - 14